Charles R. Toomajian III (SBN 302153)
  Email: charles.toomajian@zimmreed.com
Anna E. Jenks (*pro hac vice* forthcoming)
  Email: anna.jenks@zimmreed.com
Zain Shirazi (*pro hac vice* forthcoming)
  Email: zain.shirazi@zimmreed.com
Behdad C. Sadeghi (*pro hac vice* forthcoming)
  Email: behdad.sadeghi@zimmreed.com
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Tel: (612) 341-0400
Fax: (612) 341-0844

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DAVIS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC., <br><br> Defendant. | Case Number: <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. Willful Noncompliance with the FCRA <br><br> 2. Negligent Noncompliance with the FCRA. <br><br> (Jury Trial Demanded) |

CLASS ACTION COMPLAINT

Plaintiff Darryl Davis, individually and on behalf of all others similarly situated, alleges the following against Defendant Experian Information Services, Inc. ("Experian" or "Defendant") based on personal knowledge with respect to himself, and on investigation of counsel and information and belief as to all other allegations.

## I. INTRODUCTION

1. This action concerns the sale and disclosure of Plaintiff and proposed Class Members' telephone numbers in connection with "trigger leads" by Defendant Experian Information Services, Inc. in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.

2. Each year millions of American consumers apply for a home mortgage loan, a home equity loan, or to refinance an existing loan. Few who apply for credit expect their phone numbers to be included in their credit reports to third party telemarketers who then bombard these consumers with unsolicited phone calls pitching alternative loan offers for weeks or months on end. Yet millions of Americans have been subject to this unnecessary and unlawful conduct.

3. For Plaintiff and the Class Members, the primary source of this unlawful conduct is Defendant Experian Information Services, Inc., one of the "Big Three" for-profit consumer reporting agencies. Experian maintains and distributes information about individual consumers to credit lenders.

4. When Defendant received requests for Plaintiff's and Class Members' consumer credit reports from the lenders evaluating their loan applications, it immediately disclosed their consumer credit reports and telephone numbers to a swarm of third party lenders hungry for sales leads. Experian did this without Plaintiff's and Class Members' knowledge or consent and treats their protected personal information as a commodity to be sold for its own enrichment.

5. Defendant's sale of consumer credit information to third party lenders is

broadly termed a "trigger lead" in the mortgage industry. It is so termed because the "trigger" for the sales lead is the consumer's application for credit. Since Experian knows precisely when consumers have applied for credit with one lender, it views these consumers as more susceptible to offers of credit from other lenders.[1] Once an individual's telephone number and credit information fall into the hands of these third party telemarketing lenders, the calls and texts start and often do not stop for weeks or months. The resulting deluge of unsolicited sales calls to consumers has resulted in widespread consumer complaints.

6. The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, strictly protects consumers from improper disclosure of personal information maintained by Experian. Under its plain language, while the FCRA does permit Experian to release some consumer credit information with a trigger lead, it does not permit Experian to disclose consumer telephone numbers in connection with a trigger lead. *See* 15 U.S.C. § 1681b(c)(1)-(2). The sale or disclosure of Plaintiff's and Class Members' telephone numbers by Experian under these circumstances violates the FCRA.

7. Through the acts alleged herein, Experian has not only trampled on Plaintiff's and Class Members' consumer privacy rights under federal law, it has also created a nuisance for consumers across the country. Plaintiff and Class Members defined herein seek to hold Experian accountable for its unlawful conduct.

## II.     JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to the FCRA, 15 U.S.C.

---

[1] As Experian explains in its marketing material: "When a qualified consumer is actively seeking credit, you need to be there with your marketing message. With Prospect Triggers, you can reach the right people at the right time, bringing a new level of precision and profitability to your credit marketing programs." *See* https://www.experian.com/content/dam/marketing/na/assets/im/consumer-information/product-sheets/prospect-triggers.pdf.

2

CLASS ACTION COMPLAINT

1 § 1681p, 28 U.S.C. § 1331, and under 28 U.S.C. § 1332.

2     9.     This Court has personal jurisdiction over Experian because it transacts business in California and has significant contacts with this District.

3     10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff suffered an injury giving rise to the claims herein from Defendant's violations of the FCRA while living in this District.

4     11.    Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because Experian has sufficient contacts with this District to subject it to personal jurisdiction.

### III.  PARTIES

12.   Plaintiff Darryl Davis is a California citizen and a resident of Richmond, California.

13.   Defendant Experian Information Solutions, Inc. is a California corporation with its principal place of business at 475 Anton Boulevard, Costa Mesa, California, 92626. Defendant directly transacts business in this District and throughout the United States.

14.   Defendant is one of the three major nationwide consumer reporting agencies offering various credit reporting and information products and services to businesses and consumers. Experian collects, assembles, processes, stores, and maintains vast quantities of consumer information, including personal information concerning more millions of American consumers.[2]

---

[2] *See* Key Dimensions and Processes in the U.S. Credit Reporting System: A review of how the largest credit bureaus manage consumer data. https://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf.

## IV.   FACTUAL ALLEGATIONS

*Experian's Data Collection*

15.   Experian is more than just a traditional credit reporting agency. As it describes itself, "Experian's evolution from the world's leading credit bureau to a global data and analytics powerhouse is an ongoing journey."[3]

16.   At the heart of Experian's business is an expansive consumer credit database called "File One," which contains a trove of consumer information.[4] The "comprehensive database covers 250 million individuals, 126 million households, 2,600 consumer data attributes, and more."[5]

17.   Experian collects consumer credit data from a variety of sources, including banks, mortgage companies, credit unions, automobile dealers, collection agencies, and other entities.[6] Experian also collects information on student loans and child support obligations.[7]

*Experian's Sale of Trigger Leads*

18.   Leveraging the expansive data at its disposal, Experian claims to be "an industry leader" in trigger leads, "bring[ing] a new level of timeliness and precision to the prescreen process."[8]

---

[3] *See* https://www.experian.com/blogs/news/2024/01/23/experian-global-data-powerhouse/
[4] *See* https://www.experian.com/small-business/credit-profile
[5] *See* https://www.experian.com/marketing/resources/experian-marketing-data
[6] *See* What are Credit Bureaus and How Do They Work, Louis DeNicola (Oct. 2023), available at: https://www.experian.com/blogs/ask-experian/what-is-a-credit-bureau.
[7] *See* https://www.experian.com/blogs/ask-experian/category/loans/student-loans/ (student loans); https://www.experian.com/blogs/ask-experian/will-paying-child-support-remove-credit-report/ (child support).
[8] *See* https://www.experian.com/content/dam/marketing/na/assets/im/consumer-information/product-sheets/prospect-triggers.pdf

19. Experian sells trigger leads under its "Prospect Trigger" product brand, boasting to third party telemarketing lenders that "you now can increase response rates to your preapproved credit offers by contacting consumers within 24 hours of their credit activity." [9]

20. Experian advertises that "Prospect Triggers is available for banks, credit card issuers, mortgage lenders, retailers, and automotive lenders." [10]

21. The Prospect Trigger program relies on use of Experian's File One [11] database and a related Extract Plus database, which is also a "comprehensive nationwide database of credit-active consumer who are creditworthy and most likely to respond to your offer of credit." [12]

22. Media reports describe Experian's Prospect Triggers as "the first preapproved marketing solution to send data to clients based on actual consumer behavior in the most recent twenty-four hours, focusing on consumers previously identified as highly responsive and credit-active, prime candidates for preapproved offers. Additionally, it eliminates consumers with recent derogatory activity." [13]

23. Experian itself notes its Prospect Trigger service allows third party lenders to identify consumers who "fit your criteria" and "are eligible for your credit programs." [14]

---

[9] *Id.*
[10] *See* https://www.experian.com/blogs/insights/identifying-credit-active-consumers-with-prospect-triggers/
[11] *See* https://www.insidearm.com/news/00002153-experians-new-program-allows-companies-to/?utm_source=chatgpt.com:
[12] *See* https://www.experian.com/content/dam/marketing/na/assets/im/consumer-information/product-sheets/prospect-triggers.pdf
[13] *See* https://www.insidearm.com/news/00002153-experians-new-program-allows-companies-to/?utm_source=chatgpt.com
[14] *See* https://www.experian.com/business/products/prospect-triggers

5

CLASS ACTION COMPLAINT

1  The service is also "customizable," allowing third party lenders to "set screening parameters to a range of scores and attributes."[15]

24. In addition to Prospect Triggers, Experian also sells consumer credit report information for sales leads through its Mortgage and Refinance Leads service, its Mortgage Broker Leads service, and its Prescreen service, all of which also rely on Experian's expansive consumer credit database.[16]

25. Experian expressly encourages third party lenders using its Prospect Trigger service to call consumers with unsolicited loan offers using trigger leads: "Make timely credit offers by mail, **phone**, or email to increase response rates, reduce overall acquisition costs, boost profitability and reach credit-active consumers" (emphasis added).[17]

26. Reinforcing its recommendation that third party lenders contact consumers by phone, Defendant's marketing also touts that a significant benefit of purchasing trigger leads through its Prospect Trigger service is the immediate ability to contact a consumer with an unsolicited loan offer. As it explains, "[b]y receiving updates on consumers' recent credit activities, you can make firm credit offers **immediately** so you never miss an opportunity" (emphasis added).[18] "**Contact consumers within minutes** of a triggering event" (emphasis added).[19]

---

[15] *See Id.*
[16] *See* https://www.experian.com/small-business/mortgage-leads?utm_source=chatgpt.com#contact; https://www.experian.com/small-business/mortgage-broker-leads-online?utm_source=chatgpt.com; https://www.experian.com/business/products/prescreen
[17] *See Id.*
[18] *See* https://www.experian.com/blogs/insights/identifying-credit-active-consumers-with-prospect-triggers/
[19] *See* https://www.experian.com/business/products/prospect-triggers

27. Sample credit reports from the File One database, on which the Prospect Trigger service is based, also show that consumer telephone numbers are included and provided to third party lenders.[20]

28. Plaintiff's and Class Members' telephone numbers were provided to third party lenders by Experian in connection with trigger leads in their consumer credit reports.

29. Experian incorrectly claims that the trigger leads information it sells is a "fully compliant process" and "fully complies with all Fair Credit Reporting Act … requirements."[21]

30. In violation of the FCRA Section 1681b(c), Experian has been and continues to disclose and furnish Plaintiff's and Class members' telephone numbers to third-party lenders for unsolicited firm offers of credit (i.e. credit transactions that are not initiated by Plaintiff and Class Members).

*Plaintiff Darryl Davis*

31. On or about June 26, 2024, Plaintiff Darryl Davis submitted an application for a home equity loan through AmeriSave Mortgage Loan Corporation ("Amerisave").

32. The same day he submitted his loan application, AmeriSave initiated a credit inquiry with Experian to obtain his consumer credit report and evaluate his eligibility for a loan.

33. Once Experian received this credit inquiry, it sold Plaintiff's telephone number and other consumer credit report information to multiple third party lenders across the country as a trigger lead through its Prospect Trigger service and consumer credit databases.

---

[20] *See* https://www.experian.com/content/dam/marketing/na/assets/ems-sb/small-business/esolutions/pdf/us-credit-profile_sample-report.pdf

[21] *See Id.*

34. Within a day, and due to Experian's sale of Plaintiff's telephone number in his consumer credit report as part of a trigger lead, Plaintiff began receiving 8–10 unsolicited phone calls from unknown third party lenders providing him with firm offers of credit (i.e. loan offers) each day.

35. Plaintiff did not understand at the time how or why third party lenders, with whom he had no relationship, had obtained his telephone number and knew about his loan application.

36. Plaintiff did not authorize or consent to disclosure of his information to anyone other than AmeriSave, the lender with whom he applied for credit. Similarly, he did not initiate any transactions with any third party lenders who contacted him.

37. Over the course of multiple months, Plaintiff received hundreds of unwanted telephone calls, which further demonstrates Experian's repeated sale of his telephone number and other consumer credit report information to third party lenders.

38. Plaintiff was extremely frustrated by the calls and considered them to be an intrusive nuisance. The incessant calls caused him to screen his telephone calls for months, and violated his expectations of and right to consumer privacy under the FCRA.

39. As discussed further below, the FCRA does not permit the disclosure of consumer telephone numbers in connection with trigger leads. The sale and disclosure of Plaintiff's phone number by Defendant under these circumstances violated the FCRA, including 15 U.S.C. §§ 1681b, n, and o.

## V.   CLASS ALLEGATIONS

40. Plaintiff brings this action on behalf of the following Class:

All persons in the United States whose telephone number was disclosed by Experian to a third party lender in connection with a firm offer of credit from June 6, 2023, to the present.

41. Excluded from the Class is Defendant, any person or other entity employed by Defendant, the Judge and court staff assigned to this case, and counsel for Plaintiff.

42. Plaintiff specifically reserves the right to amend or change the definition or scope of any of the alleged Class set forth herein and further reserves the right to add classes or subclasses upon development of the facts and the law at the time Plaintiff brings a motion to certify a class or classes.

43. Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1)-(3).

44. **Numerosity (Rule 23(a)(1))**. The precise number of Class members and their identities are unknown to Plaintiff. However, millions of Americans apply for home loans each year. For example, in 2022 at least 14.3 million Americans applied for home loans.[22] In 2023, at least 10 million Americans applied for home loans, all or most of whom were subject to having their information sold as trigger leads.[23] The Class satisfies the numerosity requirement because it is composed of hundreds of thousands of persons, if not millions from June 2023 to the present. The number of Class members is so large that individual joinder of all its members is impracticable.

45. **Commonality (Rule 23(a)(2) and (b)(3))**. This case presents numerous common issues of law and fact. These common issues predominate over any questions affecting only individual Class Members, including the following:

A. Whether Defendant sold Plaintiff's and Class Members' telephone numbers to third party lenders in connection with trigger leads;

B. Whether 15 U.S.C. § 1681b(c) permits Defendant to disclose Plaintiff's and Class members' telephone numbers to third party lenders for the purpose of providing firm offers of credit;

---

[22] *See* https://www.consumerfinance.gov/data-research/hmda/summary-of-2022-data-on-mortgage-lending/
[23] *See* https://nationalmortgageprofessional.com/news/nearly-7-10-home-loans-belonged-imbs-2023#:~:text=(ICE)%20reported%20in%20March%20that%20only%204.3,closed%2Dend%20and%202.1%20million%20open%2Dend%20mortgage%20applications.

9

CLASS ACTION COMPLAINT

  C. Whether Defendant's acts of noncompliance with the FCRA were willful;

  D. Whether Defendant's disclosure of Plaintiff's and Class members' telephone numbers constitutes knowing and reckless disregard for the rights of Plaintiff and Class members;

  E. Whether Defendant's acts of noncompliance with the FCRA were negligent; and

  F. Whether, as a result of Defendant's acts of noncompliance with the FCRA, Plaintiff and Class members are entitled to any damages, including actual damages, statutory damages, punitive damages and/or attorneys' fees under the FCRA.

46. **Typicality (Rule 23(a)(3))**. Plaintiff's claims are typical of the claims of the Class because his claims under the FCRA are typical of, and indeed the same as, the claim brought by any other Class member who applied for credit and had their phone number and other consumer credit report information sold to third party lenders by Defendant. Plaintiff understands that this matter cannot be settled on a class-wide basis without the Court's approval.

47. **Adequacy (Rule 23(a)(4))**. Plaintiff will fairly and adequately protect the interests of the Class and is committed to the vigorous representation of the Class. Plaintiff retained counsel, Zimmerman Reed LLP, who are experienced in class action litigation, and Plaintiff has no interests antagonistic to or in conflict with the interests of the Class.

48. **Superiority (Rule 23(b)(3))**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendants. Individualized litigation would create the danger of inconsistent and varying or contradictory judgments arising from the same set of facts, and judgments

1  with respect to individual class members would, as a practical matter, be dispositive of
2  the interests of the other members not parties to the case, or substantially impair or impede
3  their ability to protect their interests. Individualized litigation would also increase the
4  delay and expense to all parties and the court system from the issues raised by this action.
5  By contrast, the class action device provides the benefits of adjudication of these issues
6  in a single proceeding with economies of scale and presents no unusual management
7  difficulties.

8      49.    Plaintiff's counsel has agreed to advance the costs of the litigation
9  contingent upon the outcome. Plaintiff's counsel are aware that no fee can be awarded
10 without the Court's approval.

11     50.    Rule 23(b)(2) also allows for class treatment when "the party opposing the
12 class has acted or refused to act on grounds that apply generally to the class, so that final
13 injunctive relief or corresponding declaratory relief is appropriate respecting the class as
14 a whole." Fed. R. Civ. P. 23(b)(2). Here, the challenged conduct at issue—Defendant's
15 unlawful sale of Plaintiff's and Class Members' telephone numbers and other consumer
16 credit report information to third parties in connection with firm offers of credit—applies
17 generally to the class, and final injunctive or declaratory relief must be provided to all
18 Class members or to none of them.

## VI.  CLAIMS

### COUNT I

**Willful Noncompliance With the FCRA, 15 U.S.C. §§ 1681b(c), 1681n**

51.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if the same were set forth herein.

52.    Experian assembles Plaintiff's and Class Members' telephone numbers and consumer credit information for the purpose of furnishing consumer credit reports to third party lenders in exchange for monetary fees or dues in interstate commerce. Experian is

therefore a "consumer reporting agency" subject to the FCRA, 15 U.S.C. § 1681a(f).

53. Third party lenders and Defendant are also considered "persons" under the FCRA. *See* 15 U.S.C. § 1681a(b).

54. Plaintiff and Class Members are "consumers" under the FCRA. *See* 15 U.S.C. § 1681a(c).

55. Information regarding Plaintiff's and Class Member's credit scores, credit history, or credit activity that Experian sold to third party lenders as trigger leads included information (1) communicating information bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, and/or mode of living; and (2) are used or expected to be used for, *inter alia*, the purpose of establishing the consumer's eligibility for personal, family, or household credit or insurance. 15 U.S.C. § 1681a(d). This information therefore constitutes "consumer reports" within the meaning of the FCRA.

56. As a credit reporting agency that tracks and maintains a trove of sensitive personal information on nearly every American, Experian is statutorily required to exercise its "grave responsibilities with fairness, impartiality, and a respect for the consumer's privacy." 15 U.S.C. § 1681(a)(4).

57. Experian must also adopt reasonable procedures for "meeting the needs of commerce for consumer credit … and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of [the FCRA]." 15 U.S.C. § 1681(b).

58. The FCRA strictly limits the circumstances under which Experian may disclose or otherwise sell a consumer credit report. Experian may lawfully furnish a consumer report only for a "permissible purpose" as enumerated in § 1681b(a). Permissible purposes include, for example, furnishing a consumer report in response to a

court order, or in accordance with written instructions of the consumer. *Id.*

59. The FCRA permits disclosing a consumer's credit report for one additional purpose. Even when a consumer has not initiated a credit transaction (i.e. has not initiated a transaction to have their consumer report released to a specific party), Experian may disclose a consumer credit report as a "trigger lead" to a third party if the third party provides a "firm offer of credit" to the consumer.[24] *See* § 1681b(c)(1).

60. However, the scope of information that may be sold or disclosed as a trigger lead is strictly limited. The "only" information that may be released is as follows: (a) "the name and address of a consumer," (b) "an identifier that is not unique to the consumer and that is used by the person solely for the purpose of verifying the identity of the consumer"; and (c) "other information pertaining to a consumer that does not identify the relationship or experience of the consumer with respect to a particular creditor or other entity." § 1681b(c)(2).

61. The FCRA thus "only" permits the release of the "name and address" of Plaintiff and Class Members for trigger leads and unsolicited firm offers of credit. The plain language of the FCRA does not permit telephone numbers to be disclosed in connection with trigger leads.

62. Defendant willfully disclosed and sold Plaintiff's and Class members' telephone numbers in violation of the FCRA because the statute does not permit the disclosure or sale of telephone numbers in connection with trigger leads.

63. It was and is objectively unreasonable for Defendant to read 15 U.S.C. §

---

[24] In general, a firm offer of credit is an offer of credit that will be honored if the consumer is determined, based on information in a consumer report, to meet the specific criteria used to select the consumer for the offer. 15 U.S.C. § 1681a(l). Such offers are sometimes characterized as "pre-approved" offers of credit or insurance. There are additional narrow circumstances (inapplicable here) in which a consumer report may be shared to a third party with an insurance or credit company with whom the consumer already has an account. 15 U.S.C. § 1681(m).

1681b(c) as permitting Defendant to disclose Plaintiff's and Class members' telephone numbers in connection with trigger leads because the only personal identifying information that may be disclosed to third parties is expressly listed and limited in the statute.

64. Defendant's sale and disclosure of Plaintiff's and Class members' telephone numbers in connection with trigger leads constitutes knowing or reckless disregard for the rights of Plaintiff and Class members under the FCRA, 15 U.S.C. § 1681n(a)(1)(A), which notes that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—**(1)(A)** any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000 []."

65. Experian's conduct harmed Plaintiff's and Class Members' concrete consumer privacy interests protected by the FRCA. Experian is therefore liable for statutory damages in an amount equal to not less than $100 in statutory for each violation. *See* 15 U.S.C. § 1681n(a).

## COUNT II

**Negligent Noncompliance with the FCRA, 15 U.S.C. §§1681b(c), 1681o**

66. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if the same were set forth herein.

67. Defendant had a duty under 15 U.S.C. 1681b(c) to only disclose information permitted by the statute.

68. Defendant had a duty not to furnish a consumer's telephone number in connection with a trigger lead because it was not permitted by statute.

69. Defendant breached that duty and sold Plaintiff's and Class Members' telephone numbers in trigger leads to third parties in violation of 15 U.S.C. § 1681b(c).

70. Defendant's disclosures of Plaintiff's and Class Members' telephone

numbers in trigger leads constitute a breach of its duties, a failure to use ordinary care, and constitutes negligent noncompliance with the FCRA under 15 U.S.C. § 1681o.

71. Experian's breach of its duties caused harm to Plaintiff's and Class Members' consumer privacy interests protected by the FCRA. Experian is therefore liable for statutory damages in an amount equal to not less than $100 for each violation. *See* 15 U.S.C. § 1681o.

## VII.  PRAYER FOR RELIEF

72. Plaintiff requests on behalf of himself and Class Members as applicable, for all relief permitted under the FCRA, including but not limited to all of the following relief:

    a. An order certifying the Class as proposed in a yet to be filed motion or motions for class certification;

    b. Statutory damages under the FCRA, 15 U.S.C. § 1681n(a)(1)(A), of not less than $100 and not more than $1,000, for each instance of Defendant's willful failure to comply with the FCRA, in an amount to be proven at trial;

    c. Punitive damages under the FCRA, 15 U.S.C. § 1681n(a)(2), in an amount to be proven at trial;

    d. Actual damages under the FCRA, 15 U.S.C. § 1681o(a) in an amount to be proven at trial;

    e. Pre-judgment interest and post-judgment interest as permitted by law;

    f. Attorneys' fees and costs under 15 U.S.C. § 1681n(c) and § 1681o(a);

    g. Such other legal and equitable relief as the court deems just.

## VIII.  RESTATED JURY DEMAND

73. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**ZIMMERMAN REED LLP**

Date: June 6, 2025   By:   /s/ *Charles R. Toomajian*

Charles R. Toomajian III (SBN 302153)
Anna E. Jenks (*pro hac vice* forthcoming)
Zain Shirazi (*pro hac vice* forthcoming)
Behdad C. Sadeghi (*pro hac vice* forthcoming)

1100 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Tel: (612) 341-0400
Fax: (612) 341-0844
charles.toomajian@zimmreed.com
anna.jenks@zimmreed.com
zain.shirazi@zimmreed.com
behdad.sadeghi@zimmreed.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT