UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DARRYL DAVIS, et al.,

            Plaintiffs,

     v.

EXPERIAN INFORMATION
SOLUTIONS, INC.,

            Defendant.

Case No. 25-cv-04819-HSG

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 9

Pending before the Court is Defendant's motion to compel arbitration. Dkt. No. 9-1 ("Mot."); Dkt. No. 14 ("Opp."); Dkt. No. 16 ("Reply"). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS** Defendant's motion to compel arbitration.

## I.    BACKGROUND

In June 2025, Plaintiff Darryl Davis filed a class action complaint against Defendant Experian Information Solutions, Inc. ("Experian") based on Defendant's alleged sale and disclosure of class members' telephone numbers in violation of the Fair Credit Reporting Act ("FRCA"). *See* Dkt. No. 1 ("Compl.") ¶ 1. Plaintiff alleges that Defendant improperly disclosed class members' telephone numbers to third party lenders when class members completed loan applications. *Id.* ¶ 4. Plaintiff brings claims for willful noncompliance and negligent noncompliance with the FRCA. *Id.* ¶¶ 51–71. Defendant moved to compel arbitration and stay the action pending arbitration. *See* Dkt. No. 9.

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable,

United States District Court
Northern District of California

and enforceable." 9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (noting federal policy favoring arbitration); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (same). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. This federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.*

When a party moves to compel arbitration, the court must determine (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In either instance, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citing 9 U.S.C. § 2).

## III.    DISCUSSION

Defendant contends that when Plaintiff Davis signed the Terms of Use Agreement to join the service CreditWorks, he agreed to arbitrate this dispute with Defendant and delegate threshold questions of arbitrability to an arbitrator. Mot. at 9–10. Plaintiff argues that the delegation clause and the arbitration agreement are unconscionable. Opp. at 5. The Court agrees with Defendant that Plaintiff formed an agreement to arbitrate related claims and that the threshold question of arbitrability has been delegated to the arbitrator. Because the Court finds the delegation clause is not unconscionable, the Court leaves the question of whether the arbitration agreement is unconscionable for the arbitrator to decide.

United States District Court
Northern District of California

2

United States District Court
Northern District of California

### A.    Formation of Agreement to Arbitrate

The party seeking to compel arbitration bears the burden of proving the existence of the agreement by a preponderance of the evidence. *See Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). In determining whether an agreement was formed, the Court applies "general state-law principles of contract interpretation," without a presumption in favor of arbitrability. *See Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (quotation omitted). Under California law, a viable contract requires: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999). "[I]f a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

Defendant argues that Plaintiff Davis entered into a contract with Experian Consumer Services ("ECS") and its affiliates—including Defendant Experian Information Solutions—when he enrolled in CreditWorks in July 2016 and agreed to the "Terms of Use Agreement." Mot. at 9–10. That contract contained an arbitration agreement under which Plaintiff agreed to arbitrate all disputes and claims against ECS and its affiliates arising out of or relating to the CreditWorks agreement:

> ECS and you agree to arbitrate all disputes and claims between us arising out of this Agreement directly related to the Services or Websites, except any disputes or claims which under governing law are not subject to arbitration.

*See, e.g.*, Dkt. No. 9-2, at 12–13 (2016 language).[1] The agreement defines "ECS" to include its

---

[1] Defendant's declaration introduces both the 2016 contract that Plaintiff signed when joining CreditWorks and the 2024 contract that Defendant claims was in effect at the time of the lawsuit. *See* Dkt. No. 9-2 ("Smith Decl.") ¶ 5. There appears to be some dispute about whether the amended 2024 language is controlling. Opp. at 6 ("Experian alleges that a new version of the Agreement, updated and implemented in December 2024 controls this dispute, even though Experian does not sufficiently show that Plaintiff actually assented to that new Agreement."). But the Court need not consider that dispute here, as "[e]very version of the Terms of Use that was in effect during Plaintiff's enrollment in CreditWorks contains an Arbitration Agreement" with the same basic terms described in this section. Smith Decl. ¶ 6.

United States District Court
Northern District of California

1   affiliates.  Dkt. No. 9-2 at 13 (noting "references to 'ECS,' 'you,' and 'us' shall include our . . .

2   affiliates").  Defendant argues that it can enforce the arbitration provision as a party to the

3   agreement and as a third-party beneficiary of the contract.  Mot. at 9–10.

4        Defendant introduces evidence that Plaintiff Davis had to click through two webpages

5   when he enrolled in CreditWorks, at which time he was presented with a disclosure that "[b]y

6   clicking 'Submit Secure Order': I accept and agree to your Terms of Use Agreement" and an off-

7   set blue hyperlink to the agreement.  Smith Decl. ¶ 4.  Defendant argues that this was sufficient to

8   provide clear notice of the terms of use, and that by clicking the submission button, Plaintiff

9   manifested his assent.  Mot. at 14.  Defendant cites a long line of cases from this circuit finding a

10   valid agreement to arbitrate after analyzing similarly situated plaintiffs, nearly identical terms, and

11   nearly identical webpage designs.  *See id.* at 7–9.  Plaintiff does not dispute any of these facts.

12        The Court finds that Defendant has met its burden of proving the existence of an

13   agreement to arbitrate.  Here, the Terms of Use Agreement hyperlink was "conspicuously

14   distinguished from the surrounding text in bright blue font, making its presence readily apparent,"

15   *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023), and the notice warning users

16   that clicking "Create Your Account" manifested assent was directly next to the button, *cf. In re*

17   *Tesla Advanced Driver Assistance Sys. Litig.*, No. 22-CV-05240-HSG, 2023 WL 6391477, at *4

18   (N.D. Cal. Sept. 30, 2023) (finding "hybrid browsewrap agreements where the terms of the

19   agreement [were] hyperlinked above the [submission] button" were enforceable contracts).  Courts

20   confronting similar facts about CreditWorks and Experian have routinely found that "the website

21   design provides constructive notice of the Terms of Use, including the arbitration provision" and

22   that clicking the "Create Your Account" button constitutes an "unambiguous manifestation of

23   assent."  *Driskill v. Experian Info. Sols., Inc.*, 753 F. Supp. 3d 839, 845 (N.D. Cal. 2024); *see also*

24   *Aguiar v. Experian Info. Sols., Inc.*, No. 2:24-CV-02403-TLN-CSK, 2025 WL 1531433, at *6

25   (E.D. Cal. May 29, 2025) (finding a valid enforceable contract in nearly identical factual

26   circumstances).

27      **B.**    **Delegation Clause**

28        Plaintiff argues that the arbitration agreement is unconscionable and cannot be enforced.

1    Opp. at 5.  Defendant argues that this challenge has been delegated to the arbitrator.  Mot. at 10;

2    Reply at 3.  But Plaintiff also challenges this delegation clause as unconscionable.  Opp. at 5.

3        **a.  Agreement to Delegate**

4        Parties to an arbitration agreement "can agree to arbitrate 'gateway' questions of

5    'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement

6    covers a particular controversy."  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).

7    "[W]hether the court or the arbitrator decides arbitrability is 'an issue for judicial determination

8    unless the parties clearly and unmistakably provide otherwise.'"  *Oracle Am., Inc. v. Myriad Grp.*

9    *A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537

10   U.S. 79, 83 (2002)).  The Supreme Court has clarified:

11

12           When the parties' contract delegates the arbitrability question to an
             arbitrator, a court may not override the contract. In those
13           circumstances, a court possesses no power to decide the arbitrability
             issue.  That is true even if the court thinks that the argument that the
14           arbitration agreement applies to a particular dispute is wholly
             groundless.

15

16   *Henry Schein*, 586 U.S. at 68.

17        The Court agrees that there is clear and unmistakable evidence of an agreement to arbitrate

18   arbitrability.  The arbitration agreement states that "the arbitrator shall have exclusive authority to

19   resolve any . . . dispute relating to the scope and enforceability of this arbitration provision or any

20   other term of this Agreement including, but not limited to any claim that all or any part of this

21   arbitration provision or Agreement is void or voidable."  Dkt. No. 9-2 at 13; *see also* Dkt. No. 9-2

22   at 30 (2024 amended agreement similarly stating that "[a]ll issues are for the arbitrator to decide

23   including, but not limited to, (i) all issues regarding arbitrability" and "(iv) whether all or any part

24   of this arbitration provision or Agreement is unenforceable, void or voidable including, but not

25   limited to, on grounds of unconscionability").  Even if this language was not clear enough on its

26   own to delegate issues of arbitrability, the agreement also states that the arbitration is governed by

27   the rules of the AAA.  Smith Decl. ¶ 6.  The AAA Commercial Arbitration Rules, in turn, provide

28   that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any

United States District Court
Northern District of California

5

objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* AAA Commercial Arbitration Rules and Mediation Procedures R-7(a).[2]  The Ninth Circuit has explicitly held that incorporation of the AAA rules can constitute clear and unmistakable delegation of the arbitrability question. *Brennan*, 796 F.3d at 1130.  The Court therefore finds that the parties' arbitration agreement expressly delegates questions of the arbitrability of any dispute to the arbitrator.  *See Boatman v. Houzz Inc.*, No. 22-CV-00738-JSW, 2022 WL 1528171, at *3–*4 (N.D. Cal. Apr. 7, 2022) (collecting cases).

### b. Enforceability of Delegation Clause

"Because a court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator, the only remaining question is whether the particular agreement to *delegate* arbitrability—the Delegation Provision—is itself unconscionable." *Brennan*, 796 F.3d at 1132 (emphasis in original); *see also Rent-A-Center*, 561 U.S. at 72 ("Accordingly, *unless [plaintiff] challenged the delegation provision specifically*, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.") (emphasis added).[3]  Under California law, an agreement is enforceable unless it is both procedurally and substantively unconscionable. *See Armendariz v. Foundation Health Psychcare Servs. Inc.*, 24 Cal. 4th 83, 114 (2000). Procedural and substantive unconscionability need not be present in equal amounts. *Id.*  Rather,

---

[2] *See* American Arbitration Association, https://www.adr.org/media/qielmf0g/2025_commercialrules_web.pdf (last visited Oct. 22, 2025).

[3] Defendant argues that Plaintiff challenges only the explicit delegation clause, not the delegation provision incorporated under the AAA rules. Reply at 3.  As a result, Defendant suggests that Plaintiff's unconscionability arguments are independently delegated to the arbitrator, regardless of whether the explicit delegation clause is unconscionable. *Id.*  But Defendant's cited cases do not address this apparently novel argument. *See, e.g.*, *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1199 (9th Cir. 2024) (addressing an unconscionability challenge to a delegation clause where the contract incorporated the AAA rules, without discussing if the challenge had to distinguish between the two sources of delegation).  The Court sees no reason why Plaintiff's specific arguments against the delegation clause here would not apply to the delegation provision incorporated under the AAA rules. *Cf. Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) (requiring that "a party resisting arbitration must mention that it is challenging the delegation provision and make specific argument attacking the provision in its opposition to a motion to compel arbitration").

United States District Court
Northern District of California

the two are evaluated on a "sliding scale," such that the more evidence of procedural unconscionability there is, the less evidence of substantive unconscionability is needed to render the agreement unenforceable, and vice versa. *Id.* However, both forms of unconscionability must be present in some amount "for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1521 (1997), *as modified* (Feb. 10, 1997). A court must "consider the parts of the agreement that impact[ ] the delegation provision to decide its enforceability," which may involve examining the underlying arbitration agreement. *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011–12 (9th Cir. 2023). "[T]he party resisting enforcement of an arbitration agreement has the burden to establish unconscionability." *See Ramirez v. Charter Comms. Inc.*, 16 Cal. 5th 478, 492 (2024).

### i. Procedural Unconscionability

Procedural unconscionability "focus[es] on 'oppression' or 'surprise' due to unequal bargaining power." *Armendariz*, 24 Cal. 4th at 114 (quotation omitted). Plaintiff argues that the delegation clause is procedurally unconscionable because (1) it is contained within a contract of adhesion; (2) there is a significant power imbalance between Defendant and its customers because it is one of three major consumer reporting agencies in the U.S. and is specifically recommended by the federal government; (3) a person is bound to the delegation clause merely by browsing or accessing Defendant's website; (4) Defendant has unilateral authority to amend the delegation clause under an amendment provision; (5) the agreement is affirmatively misleading because it states that class arbitrations and class actions are not permitted but batches claims under a mass arbitration clause; and (6) the agreement is confusing and vague because it broadly applies to the websites and services of a non-exhaustive list of affiliates. Opp. at 10–13.

In arguing that these factors constitute extreme procedural unconscionability, Plaintiff primarily relies upon the Ninth Circuit's recent decision in *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670 (9th Cir. 2024), *cert. denied sub nom. Live Nation v. Heckman*, No. 24-1145, 2025 WL 2823733 (U.S. Oct. 6, 2025). In *Heckman*, the Ninth Circuit affirmed the lower court's finding that the delegation clause in an arbitration agreement was procedurally unconscionable "to an extreme degree." *Id.* at 681. The court found the arbitration agreement to be "much more than a

mere garden variety contract of adhesion," and found oppression (because consumers could either accept the terms or "be entirely foreclosed from purchasing tickets on the primary market") and surprise (because "Ticketmaster's Terms state they may be changed without notice and changes apply retroactively," and users who merely browsed the website were bound by the terms). *Id.* at 682. The court also noted that "the Rules are so dense, convoluted and internally contradictory to be borderline unintelligible" and are affirmatively misleading because they state that claims will be resolved by individual arbitration rather than "in any purported class or representative proceeding," yet batch cases with common issues or facts and treat them in a class or representative fashion. *Id.* at 683. Defendant argues against each of Plaintiff's points, mostly by distinguishing the case from *Heckman*. Reply at 4–10.

The Court agrees that there are significant differences between this case and *Heckman* and that there is a much lower degree of procedural unconscionability in this agreement. First, while there is an amendment provision that allows Experian to modify the terms of the agreement at any time, the agreement allows users to opt out of the amendments and does not contain language applying changes retroactively. The relevant provision states that "if ECS makes any changes to the arbitration provision . . . [the user] may reject any such change and require ECS to adhere to the language in this provision as written at the time of . . . enrollment or purchase if a dispute between us arises regarding such Service." Dkt. No. 9-2 at 13.[4] Second, the Court does not find the rules to be "internally contradictory" here, since the batched proceedings discussed in the mass arbitration clause—discussed further below—still involve individual resolutions and serve only to consolidate filing fees. *Id.* at 31. As a result, there is no surprise or contradiction between these batch proceedings and the statement that "class arbitrations and class actions are not permitted." *Compare Heckman*, 120 F.4th at 683, *with* Dkt. No. 9-2 at 28, 31. And while "take-it-or-leave-it adhesion contracts always contain some degree of procedural unconscionability," *Bielski*, 87 F.4th at 1014 (quotation omitted), "the adhesive nature of a contract, without more, would give rise to a

---

[4] The quote provided by Defendant in its reply additionally requires that Plaintiff "provide[] Notice to ECS at the Notice Address above prior to initiating your dispute" in order to reject an amendment, Reply at 8, but the Court did not find this language in the 2016 or 2024 contracts. Nevertheless, this would not change the Court's analysis of this distinction from *Heckman*.

low degree of procedural unconscionability at most," *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261–62 (9th Cir. 2017). Thus, the Court finds that, while there is some low level of procedural unconscionability here, it is far from the extreme degree in *Heckman*.

### ii. Substantive Unconscionability

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019) (quotation omitted). The doctrine "is concerned with terms that are unreasonably favorable to the more powerful party, not just a simple old-fashioned bad bargain." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001–02 (9th Cir. 2021) (quotation omitted). Plaintiff argues that the agreement's mass arbitration clause, limitation on liability, and notice requirements render the delegation clause substantively unconscionable. Opp. at 14.

First, Plaintiff argues that the mass arbitration clause deters users from vindicating their rights, as in *Heckman*. Opp. at 14. The relevant mass arbitration clause applies when at least 25 arbitration demands are filed within 180 days of each other, allege similar or identical claims, and are filed by the same or coordinating counsel. Dkt. No. 9-2 at 31. In such a case, the arbitration provider shall "group the arbitration demands into batches" and "provide for resolution of each group or batch as a single arbitration with one set of filing and administrative fees and a single arbitrator assigned per group or batch." *Id.* "All Mass Arbitration shall be subject to all other substantive and procedural terms contained within this Agreement." *Id.*

Plaintiff argues that batched proceedings "will necessarily require some sort of class action procedure or bellwether mechanism to resolve issues" and may bind subsequent plaintiffs to previous rulings they were not a part of; otherwise, these batches will result in "unconscionable delays." Opp. at 14–16. Defendant argues that the mass arbitration clause does not contain a bellwether provision and is a consolidation device that is "confined to the appointment of an arbitrator and applying a single set of fees to each batch." Reply at 11–12. Defendant notes that this agreement also does not impose any limit on the number of arbitrations that may proceed at one time or on the number of claimants per attorney, and one arbitration does not have a precedential effect on any other. *Id.* at 12.

1    In *Heckman*, the Ninth Circuit considered whether a delegation clause was substantively

2    unconscionable because it contained a mass arbitration clause that batched cases before a single

3    arbitrator, who then adjudicated three chosen bellwether cases. *Heckman*, 120 F.4th at 678. "The

4    arbitrator's decisions in these cases [became] 'precedent' on all common issues in the batched

5    cases, as well as in any later-filed cases added to the batch." *Id.* "Decisions by the arbitrator in a

6    bellwether case that favors a defendant [would] thus be binding on non-bellwether plaintiffs, who

7    had no chance to participate in the arbitration and who [were] ignorant of the decision until it

8    [was] invoked against them." *Id.* at 679. When considering the delegation clause, the court

9    expressed concern that "the validity of the delegation clause in all cases [would be] decided in

10   bellwether cases, even though plaintiffs in the non-bellwether cases ha[d] no right to participate in

11   the bellwether cases . . . violat[ing] basic principles of due process" *Id.* at 684. The court

12   acknowledged that application of bellwether precedent was discretionary, but found that failure to

13   apply the precedent would "defeat the very purpose of the mass arbitration protocol." *Id.* at 685.

14   The Court finds that "[t]he consolidation here implicates none of [*Heckman*'s] concerns"

15   since "no claimant is at the mercy of another claimant's representation of her." *Jones v. Starz*

16   *Ent., LLC*, 129 F.4th 1176, 1182 (9th Cir. 2025). The parties' agreement does not contain any

17   bellwether provision and does not bind later plaintiffs to previously adjudicated decisions. *Cf. id.*

18   (similarly distinguishing *Heckman* in case where 7,300 individual demands were consolidated

19   before a single JAMS arbitrator).[5] Instead, the mass arbitration clause here appears to primarily

20   reduce fees for Defendant when confronting many similar claims. This mechanism does not

21   "pertain to the special risks posed by the binding effect of a resolution upon absent class members,

22   who must be afforded sufficient notice, opportunity to be heard, and adequate representation by

23   the lead parties." *Id.* And contrary to Plaintiff's argument—and unlike in *Heckman*—the purpose

24   of avoiding mass fees would not require the arbitrator to read in a bellwether procedure that the

25   _____

26   [5] Plaintiff suggests that "a consumer conceivably could be batched with claims against Experian
     that were filed during the previous six months and thus be subject to any ruling previously decided

27   by the arbitrator for that batch." Opp. at 15. This was a legitimate concern in *Heckman*, where the
     agreement specified that arbitrator's decisions were binding on later-filed cases. 120 F.4th at 678.

28   But there is nothing similar in this agreement that would bind later-filed cases or otherwise
     prevent later consumers from being heard.

United States District Court
Northern District of California

agreement otherwise does not provide. [6]  Plaintiff objects to the language that this will be a "single arbitration"—but nothing in the agreement suggests that this language means anything more than reducing fees and consolidating claims before a single arbitrator.  *Cf. Atkins v. Amplitude, Inc.*, No. 24-CV-04913-RFL, 2025 WL 2521732, at *4 (N.D. Cal. Sept. 2, 2025) (rejecting unconscionability challenge to clause with language that "the arbitration provider shall provide for resolution for each batch as a single arbitration with one set of filing and administrative fees and one arbitrator assigned per batch").[7]  The Court thus finds that this provision is not substantively unconscionable.[8]

Second, Plaintiff argues that the agreement's limited liability clause—which reduces Defendant's liability to the amount the consumer paid for Experian's services in the twelve months prior to the event giving rise to the liability—is one-sided and unjustified.  Opp. at 17–18. Defendant argues that this unconscionability challenge does not relate to the delegation clause. Reply at 15.  The Court agrees, since the "limitation on liability will not apply to arbitration proceedings deciding whether the dispute is arbitrable, including whether the Arbitration Agreement is unconscionable."  *In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 873 (N.D. Cal. 2024); *see also Bielski*, 87 F.4th at 1011 (noting a party must "articulate[] why the argument invalidates" the delegation clause).

Third, Plaintiff argues that the notice provision is substantively unconscionable because "only the consumer is required to describe the nature and basis of their claim and set forth the

---

[6] Plaintiff additionally argues that unconscionable delays will occur absent mechanisms like bellwether proceedings.  Opp. at 16.  The Court agrees with Defendant that Plaintiff's cited cases both involved delays *because of* bellwether provisions that limited the number of issues and cases that the arbitrator would hear at a time.  *See MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1040 (N.D. Cal. 2022); *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *6 (N.D. Cal. Sept. 4, 2024).

[7] The agreement in *Atkins* additionally stated that the rulings would not have a preclusive effect. *Atkins*, 2025 WL 2521732, at *5.  The Court nevertheless finds *Atkins* persuasive, since nothing in Experian's agreement would impose a preclusive effect.

[8] The Court also rejects the notion that the provision is unconscionable just because an arbitrator has an incentive to enforce it to keep the case, *see* Opp. at 15, since conflict issues "are virtually always present with delegation clauses," *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 249 (2014).

United States District Court
Northern District of California

specific relief that they seek" before "filing an arbitration demand and litigating issues surrounding the Delegation Clause." Opp. at 17. The Court disagrees. The notice provision requires that "[a] party who intends to seek arbitration must first send to the other, by certified mail, a written Notice of Dispute." Dkt. No. 9-2 at 29. While the provision does not precisely outline what ECS must include in its notice, generally this "provision is mutual and applies to any party who wants to arbitrate a dispute." *Taft v. Henley Enters., Inc.*, 2016 WL 9448485, at *8 (C.D. Cal. Mar. 2, 2016); *Nguyen v. Applied Med. Res. Corp.*, 4 Cal. App. 5th 232, 254–55 (2016) (contrasting unilateral and bilateral pre-arbitration requirements). Courts confronting similar notice requirements have concluded that they are not unconscionable. *See, e.g.*, *In re BAM*, 733 F. Supp. 3d at 867; *Taft*, 2016 WL 9448485, at *8 (noting that the fact that "notice requires a party to 'detail the facts upon which the claims are based' does not unfairly prejudice that party").

Having rejected these three arguments—and noting that many of the other substantively unconscionable features from *Heckman*, such as the lack of discovery, are not present here—the Court determines that Plaintiff has not carried his burden of showing that the delegation clause is substantively unconscionable. *Cf.* 120 F. 4th at 683–84. As such, the Court does not consider Plaintiff's argument that the arbitration agreement is unconscionable, since that issue has been delegated to the arbitrator.

## C. *Discover Bank*

In the alternative, Plaintiff argues that the agreement is unconscionable under the rule announced in *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005). Opp. at 21. In *Discover Bank*, the California Supreme Court held that class action waivers are unconscionable under California state law in consumer contracts of adhesion involving small damages awards. *Id.* at 162. The U.S. Supreme Court later held that the FAA preempts the *Discover Bank* rule, which poses an obstacle to the FAA's objectives. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011). But, as the Ninth Circuit recently held in *Heckman*, the FAA does not protect certain mass arbitration models. *Heckman*, 120 F.4th at 690. As a result, the *Heckman* court held that the *Discover Bank* rule was not preempted in the case of Ticketmaster's mass arbitration models. *Id.* Plaintiff argues that the mass arbitration clause in CreditWork's Terms of Use Agreement

eliminates the bilateral arbitration that the FAA is meant to protect and is unconscionable under the *Discovery Bank* rule.  Reply at 23.

Because the mass arbitration provision at issue in this agreement serves primarily to consolidate proceedings under a single set of fees and does not eliminate the bilateral nature of arbitration proceedings, the Court does not apply the *Discovery Bank* rule.  Courts confronted with similar consolidation provisions have rejected this same argument.  *See, e.g.*, *Cordero v. Coinbase, Inc.*, No. 25-CV-04024-CRB, 2025 WL 2223495, at *4–*5 (N.D. Cal. Aug. 5, 2025) (noting that the provision at issue involved consolidation rather than binding bellwether procedures, and declining to adopt a version of *Heckman* that "would exclude all non-individualized arbitration from the FAA's protection").

## IV.    CONCLUSION

The Court **GRANTS** Defendant's motion to compel arbitration.  Dkt. No. 9.  The Court **STAYS** proceedings with respect to Plaintiff Davis only.[9]


        **IT IS SO ORDERED.**

Dated:    10/24/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[9] In August 2025, shortly after the Court took the matter under submission, Plaintiff amended his complaint to include an additional named plaintiff, Brett McNamar, who Plaintiff believed was not subject to any arbitration agreement with Defendant.  *See* Dkt. No. 25 (motion); Dkt. No. 31 (order granting leave); Dkt. No. 33 (amended complaint).  The Court does not currently have before it a motion to stay the case with respect to the newly added plaintiff, and it does not consider such a stay at this time.

United States District Court
Northern District of California