John A. Vogt, Bar No. 198677
javogt@jonesday.com
Ryan D. Ball, Bar No. 321772
rball@jonesday.com
Matthew T. Billeci, Bar No. 329014
mbilleci@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California 92612.4408
Telephone:     +1.949.851.3939
Facsimile:     +1.949.553.7539

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DAVIS and BRETT MCNAMAR, individually, and on behalf of those similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>　　　　　Defendant. | Case No. 4:25-cv-04819-HSG<br>Assigned to: Judge Haywood S. Gilliam, Jr.<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO 12(B)(1) AND 12(B)(6)**<br><br>Date: December 11, 2025<br>Time: 2:00 p.m.<br>Courtroom: 2 |

**<u>NOTICE OF MOTION AND MOTION</u>**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT**, on December 11, 2025, at 2:00 p.m. in Courtroom 2 of the above-referenced Court, located at 1301 Clay Street, Oakland, CA 94612, the Honorable Haywood S. Gilliam, Jr. presiding, Defendant Experian Information Solutions, Inc. ("Experian") will, and hereby does, move this Court for an Order, pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing Plaintiff Brett McNamar's First Amended Complaint with prejudice.

Experian's motion is made on two grounds. First, the Court lacks subject matter jurisdiction because Plaintiff McNamar lacks Article III standing. Second, Plaintiff McNamar fails to state a claim upon which relief can be granted under the Fair Credit Reporting Act. Experian therefore respectfully requests that the Court dismiss this action against Experian, in its entirety, with prejudice.

The Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, Request for Judicial Notice, all of the papers on file in this action, and upon such other and further evidence or argument that the Court may consider.

Dated:  October 31, 2025                                   JONES DAY

                                                            */s/ Ryan D. Ball*
                                                            Ryan D. Ball

                                                            *Attorneys for Defendant*
                                                            *Experian Information Solutions, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 3

I.      Prescreening And The FCRA ................................................................................. 3

II.     Plaintiffs' Allegations ............................................................................................. 4

STANDARD ......................................................................................................................... 6

ARGUMENT ........................................................................................................................ 7

I.      Plaintiff McNamar Lacks Article III Standing ...................................................... 7

     A.     Plaintiff Lacks A Protected Privacy Interest In His Telephone Number ................ 7

     B.     Plaintiff Does Not Have Standing Based on Third-Party Calls ........................... 10

II.    Plaintiff Does Not Allege Experian Violated Section 1681b(c)(2) ................................... 13

III.   Plaintiff Cannot Allege a Willful Violation ...................................................................... 15

CONCLUSION .................................................................................................................. 18

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

4

CASES

5

*Abbink v. Experian Info. Sols., Inc.*,
   2019 WL 6838705 (C.D. Cal. Sept. 20, 2019)........................................................ 2, 3, 11, 13

6

7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................................... 6, 7

8

*Banga v. First USA, NA*,
   29 F. Supp. 3d 1270 (N.D. Cal. 2014) .................................................................................. 15

9

10

*Baysal v. Midvale Indem. Co.*,
   78 F.4th 976 (7th Cir. 2023) ................................................................................................. 10

11

12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................... 6

13

14

*Cole v. U.S. Capital, Inc.*,
   389 F.3d 719 (7th Cir. 2004).............................................................................................. 3, 11

15

16

*Consumer Fin. Prot. Bureau v. Gordon*,
   819 F.3d 1179 (9th Cir. 2016)............................................................................................... 16

17

18

*Cordoba v. DIRECTV, LLC*,
   942 F.3d 1259 (11th Cir. 2019)............................................................................................. 12

19

20

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) .............................................................................................................. 11

21

22

*Drake v. Enhanced Recovery Co., LLC*,
   2018 WL 1402586 (D. Or. Mar. 19, 2018) ............................................................................ 8

23

24

*Gray v. Experian Info. Sols., Inc.*,
   2023 WL 6895993 (M.D. Fla. Oct. 19, 2023) .................................................................. 8, 13

25

26

*Greenley v. Kochava, Inc.*,
   684 F. Supp. 3d 1024 (S.D. Cal. 2023) .................................................................................. 6

27

*Grijalva v. ADP Screening & Selection Servs. Inc.*,
   151 F.4th 1055 (9th Cir. 2025) ............................................................................................. 17

28

*Hall v. Smosh Dot Com, Inc.*,
   72 F.4th 983 (9th Cir. 2023) ........................................................................................... 11

*Harrington v. Choicepoint Inc.*,
   2006 WL 8198396 (C.D. Cal. Oct. 11, 2006) ................................................................. 8

*Harris v. Database Mgmt. & Mktg., Inc.*,
   609 F. Supp. 2d 509 (D. Md. 2009) ........................................................................... 3, 4

*I.C. v. Zynga, Inc.*,
   600 F. Supp. 3d 1034 (N.D. Cal. 2022) ............................................................. 6, 10, 12

*In re Davis*,
   960 F.3d 346 (6th Cir. 2020) ........................................................................................ 14

*In re Illuminate Educ. Data Sec. Incident Litig.*,
   2023 WL 3158954 (C.D. Cal. Apr. 19, 2023) .............................................................. 12

*In the Matter of Trans Union Corp.*,
   2000 WL 257766 (Feb. 10, 2000) ................................................................................ 16

*Jackson Nat'l Life Ins. Co. v. Crum*,
   54 F.4th 1312 (11th Cir. 2022) .................................................................................... 14

*Jackson v. Loews Hotels, Inc.*,
   2019 WL 6721637 (C.D. Cal. July 24, 2019) ................................................... 2, 10, 12

*Johnson v. Yuma Reg'l Med. Ctr.*,
   769 F. Supp. 3d 936 (D. Ariz. 2024) ........................................................................... 12

*Jones v. Royal Admin. Servs., Inc.*,
   887 F.3d 443 (9th Cir. 2018) ....................................................................................... 12

*K.L. v. Legacy Health*,
   2024 WL 4794657 (D. Or. Nov. 14, 2024) .................................................................. 12

*Kennedy v. Chase Manhattan Bank USA, NA*,
   369 F.3d 833 (5th Cir. 2004) ................................................................................... 3, 11

*Khamooshi v. Politico LLC*,
   2025 WL 1408896 (N.D. Cal. May 13, 2025) ............................................................... 6

*Kishnani v. Royal Caribbean Cruises Ltd.*,
   2025 WL 1745726 (N.D. Cal. June 24, 2025) ............................................................... 9

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 4:25-cv-04819-HSG

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Landgraf v. USI Film Products*,
    511 U.S. 244 (1994) ................................................................................. 15, 17

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ..................................................................................... 13

*Lien v. Talkdesk, Inc.*,
    2025 WL 551664 (N.D. Cal. Feb. 19, 2025) ..................................................... 2, 10

*Luckau v. Sunrun, Inc.*,
    2025 WL 2780784 (N.D. Cal. Sept. 30, 2025) ....................................................... 12

*Martin v. Hadix*,
    527 U.S. 343 (1999) ..................................................................................... 15

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ............................................................................ 6

*Moran v. Screening Pros, LLC*,
    25 F.4th 722 (9th Cir. 2022) ............................................................................. 15

*Morgan v. Twitter, Inc.*,
    2023 WL 3271147 (E.D. Wash. May 5, 2023) ........................................................ 12

*Nayab v. Cap. One Bank (USA), N.A.*,
    942 F.3d 480 (9th Cir. 2019) .......................................................................... 8, 11

*People of State of Cal. v. F.C.C.*,
    75 F.3d 1350 (9th Cir. 1996) .......................................................................... 2, 10

*Perrong v. S. Bay Energy Corp.*,
    2021 WL 1387506 (E.D. Pa. Apr. 13, 2021) .......................................................... 12

*Phillips v. U.S. Customs & Border Prot.*,
    74 F.4th 986 (9th Cir. 2023) ........................................................................... 2, 9

*Phipps v. Experian Info. Sols., LLC*,
    2024 WL 5001842 (2d Cir. Dec. 6, 2024) ........................................................... 8-9

*Poehl v. Countrywide Home Loans, Inc.*,
    528 F.3d 1093 (8th Cir. 2008) ....................................................................... 13-14

*Popa v. Microsoft Corp.*,
    2025 WL 2448824 (9th Cir. Aug. 26, 2025) ............................................................ 9

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 4:25-cv-04819-HSG

*Popa v. PSP Grp., LLC*,
   2023 WL 7001456 (W.D. Wash. Oct. 24, 2023) .................................................................. 10

*Premium Morg. Corp. v. Equifax Info. Servs., LLC*,
   2008 WL 4507613 (W.D.N.Y. Sept. 30, 2008) ..................................................................... 4

*Premium Mortg. Corp. v. Equifax, Inc.*,
   583 F.3d 103 (2d Cir. 2009) ................................................................................................ 14

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ............................................................................................... 6

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007) .................................................................................................... 3, 15, 17

*Sapan v. Shore Cap. Corp.*,
   2024 WL 4002620 (C.D. Cal. May 31, 2024) ..................................................................... 12

*Schick v. Caliber Home Loans, Inc.*,
   2021 WL 4166906 (N.D. Cal. Sept. 14, 2021) .................................................................... 12

*Shaw v. Experian Info. Sols., Inc.*,
   891 F.3d 749 .................................................................................................................. 16, 17

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .............................................................................................................. 8

*Stergiopoulos v. First Midwest Bancorp, Inc.*,
   427 F.3d 1043 (7th Cir. 2005) ............................................................................................... 3

*Stewart v. Network Cap. Funding Corp.*,
   2021 WL 6618542 (C.D. Cal. July 2, 2021) ....................................................................... 12

*Sullivan v. Greenwood Credit Union*,
   520 F.3d 70 (1st Cir. 2008) ................................................................................................... 4

*Syed v. M-I, LLC*,
   853 F.3d 492 (9th Cir. 2017) ................................................................................................. 7

*Tailford v. Experian Info. Sols., Inc.*,
   26 F.4th 1092 (9th Cir. 2022) ............................................................................................... 8

*Thrasher v. CMRE Fin. Servs., Inc.*,
   2015 WL 1138469 (S.D. Cal. Mar. 13, 2015) ................................................................. 2, 10

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 4:25-cv-04819-HSG

*Trans Union Corp. v. F.T.C.*,
    245 F.3d 809 (D.C. Cir. 2001) .............................................................................. 16

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ....................................................................................... 6, 7

*Wilson v. Retail Credit Co.*,
    457 F.2d 1406 (5th Cir. 1972) ............................................................................ 17

1

## **INTRODUCTION**

2       This case concerns prescreened offers of credit under the Fair Credit Reporting Act

3   ("FCRA"). Section 1681b(c) of the FCRA authorizes consumer reporting agencies, like defendant

4   Experian Information Solutions, Inc. ("Experian"), to furnish a consumer report "in connection

5   with any credit or insurance transaction that is not initiated by the consumer"—*i.e.*, a prescreened

6   offer—so long as the report is limited to the following three pieces of information:  (1) "the name

7   and address of a consumer"; (2) "an identifier that is not unique to the consumer and that is used

8   by the person solely for the purpose of verifying the identity of the consumer"; and (3) "other

9   information pertaining to a consumer that does not identify the relationship or experience of the

10  consumer with respect to a particular creditor or other entity."  15 U.S.C. § 1681b(c)(2)(A)–(C).

11      Plaintiff contends that Experian violated the FCRA by including his phone number in a

12  consumer report furnished in connection with a prescreened offer of credit because, according to

13  Plaintiff's reading of the statute, the FCRA "'**only**' permits the release of the '**name and address**'

14  of Plaintiffs" in connection with a prescreened offer.  ECF No. 33, ¶ 71 (emphasis added).

15  Plaintiff cannot cite a single case that has ever endorsed such a reading of Section 1681b(c).

16  For good reason:  The statute, on its face, expressly allows Experian to include in the report

17  "**other information pertaining to a consumer**"—such as, for example, a person's telephone

18  number—so long as that information "does not identify the relationship or experience of the

19  consumer with respect to a particular creditor or other entity."  Plaintiff's phone number does not

20  identify any relationship or experience Plaintiff has with any creditor or other entity.  Accordingly,

21  the gravamen of the case is barred by the express language of the statute.  And, because leave to

22  amend would be futile, the Court should dismiss this action with prejudice under Rule 12(b)(6).[1]

23      The Court, however, need not reach the merits of Plaintiff's claims at all because the

24  disclosure of his phone number cannot possibly have caused him concrete harm.  After all, courts

25  in this Circuit (and beyond) repeatedly have held that the disclosure of basic contact information,

26

27      [1] As demonstrated below, there are numerous other reasons why Plaintiff's claims cannot
move forward on the merits.  But suffice to say, the Court need not wade into them as Plaintiff's
28  legal theory is irreconcilable with the express language of Section 1681b(c)(2).

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 4:25-cv-04819-HSG

1   like a person's telephone number, is insufficient to confer Article III standing. *See*, *e.g.*, *Phillips v.*

2   *U.S. Customs & Border Prot.*, 74 F.4th 986, 996 (9th Cir. 2023) (retention of personal contact

3   information is neither private nor "highly offensive"); *Jackson v. Loews Hotels, Inc.*, 2019 WL

4   6721637, at *4 (C.D. Cal. July 24, 2019) (disclosure of phone number not "sensitive enough" to

5   confer standing); *Lien v. Talkdesk, Inc.*, 2025 WL 551664, at *1 (N.D. Cal. Feb. 19, 2025) ("phone

6   numbers" were "simply not private or personal enough to confer standing") (collecting cases);

7   *People of State of Cal. v. F.C.C.*, 75 F.3d 1350, 1361 (9th Cir. 1996) ("A phone number is not

8   among the select privacy interests protected by a federal constitutional right to privacy."); *Thrasher*

9   *v. CMRE Fin. Servs., Inc.*, 2015 WL 1138469, at *3 (S.D. Cal. Mar. 13, 2015) ("The disclosure of

10   phone numbers and names does not constitute a serious invasion of privacy and is commonplace in

11   class actions.").

12       While Plaintiff alleges that Experian's disclosure of his phone number resulted in him

13   receiving unwanted calls from third party lenders, that allegation does not create Article III standing

14   as to Experian. Plaintiff does not allege that Experian was the party that placed the call; nor does

15   Plaintiff allege that the call was placed on Experian's behalf. At most, Experian disclosed his phone

16   number to potential lenders, who then placed the call for their own purposes. But even then, a

17   lender's act of calling Plaintiff is insufficient to cause concrete harm because the FCRA expressly

18   permits lenders making prescreened offers of credit to contact consumers. *See* 15 U.S.C. §

19   1681b(c)(1)(B); *see also Abbink v. Experian Info. Sols., Inc.*, 2019 WL 6838705, at *3 (C.D. Cal.

20   Sept. 20, 2019). If Plaintiff did not wish to be contacted by prescreen lenders, he has the statutory

21   right to opt-out of receiving such offers, *see* 15 U.S.C. § 1681b(e)(1), which he does not allege he

22   ever did. Because Plaintiff cannot have been harmed by Experian's disclosure of his phone number

23   to a lender who, under federal law, has the statutory right to contact him in connection with a

24   prescreened offer of credit, Plaintiff lacks Article III standing.

25       In short, beyond the fact that Plaintiff's theory of the case is barred by the express language

26   of Section 1681b(c)(2) of the FCRA, Plaintiff could not have suffered concrete harm caused by

27   Experian's disclosure of his phone number in connection with a prescreened offer of credit.

28   For these reasons, and those set forth below, this suit should be dismissed.

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 4:25-cv-04819-HSG

**BACKGROUND**

**I.    Prescreening And The FCRA**

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 52 (2007); *see also* 15 U.S.C. § 1681.  To protect consumer privacy, the FCRA describes the circumstances under which a credit reporting agency ("CRA"), like Experian, may lawfully furnish a consumer report to a third party; these are called permissible purposes. 15 U.S.C. § 1681b; *see also Stergiopoulos v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1045–46 (7th Cir. 2005).  "A CRA has a permissible purpose (and thus may lawfully) furnish a consumer report to 'a person which it has reason to believe,' among other things, 'intends to use the information in connection with a credit transaction involving the consumer . . . and involving the extension of credit to, or review or collection of an account of, the consumer,' (15 U.S.C. § 1681b(a)(3)(A)), or in connection with an unsolicited (*i.e.*, prescreen) credit transaction that 'consists of a firm offer of credit' (15 U.S.C § 1681b(c)(1)(B))." *Abbink*, 2019 WL 6838705, at *3.

In prescreening, a user, such as a lender, or an agent acting on the lender's behalf, submits pre-selected credit criteria to a CRA, who returns a list of consumers who meet that criteria, called a prescreen list.  *See Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839–41 (5th Cir. 2004) (describing prescreening process); *see also Harris v. Database Mgmt. & Mktg., Inc.*, 609 F. Supp. 2d 509, 513 (D. Md. 2009).  The lender, in return, agrees to extend a firm offer of credit to all consumers who meet the preselected criteria. *Kennedy*, 369 F.3d at 839–41.  Prescreening is one of the few instances where the FCRA allows consumer credit information to be disclosed to a third party without the consumer's knowledge or consent. *Id.*  Accordingly, inquiries associated with prescreening cannot be divulged to anyone but the consumer, cannot impact the consumer's credit score, and reveal limited information about the consumer.  *See* 15 U.S.C. § 1681b(c).  By allowing prescreening, Congress struck a balance between the consumer's right to privacy and the value a consumer receives from a firm offer of credit.  *See Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 725 (7th Cir. 2004) ("Congress balanced any privacy concerns created by pre-screening with the benefit of a firm offer of credit or insurance for all consumers identified through the screening process.")

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 4:25-cv-04819-HSG

1  (cleaned up); *Harris*, 609 F. Supp. 2d at 513 (citing *Trans Union Corp. v. F.T.C.*, 267 F.3d 1138,

2  1143 (D.C. Cir. 2001)); *Sullivan v. Greenwood Credit Union*, 520 F.3d 70, 77 (1st Cir. 2008) (the

3  "minimal invasion of privacy" of providing the contact information of consumers that matched

4  "pre-selected criteria" is "offset by the value of the information in the" firm offer of credit).

5  Consumers who nevertheless do not wish to receive such offers may opt-out of being included in

6  any prescreen lists. 15 U.S.C. § 1681b(c)(1)(B).

7      This case involves "mortgage triggers," which are a type of pre-screen.  These trigger leads

8  "are generated when the credit report of a consumer meeting predetermined credit qualifications

9  (as established by each lending agency) indicates that the consumer has recently applied for a

10  mortgage loan. Upon receiving a trigger lead, the lending agency then has the opportunity to

11  compete for the consumer's business by making a loan offer to the consumer." *Premium Morg.*

12  *Corp. v. Equifax Info. Servs.*, *LLC*, 2008 WL 4507613, at *1 (W.D.N.Y. Sept. 30, 2008), *aff'd sub*

13  *nom. Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103 (2d Cir. 2009).

14      On September 5, 2025, President Trump signed the Homebuyers Privacy Protection Act

15  ("HPPA") into law.  The HPPA amended § 1681b(c) of the FCRA to "limit the circumstances in

16  which credit reporting agencies may provide consumer credit reports to third parties in connection

17  with residential mortgage transactions."  The law was passed to curb the ongoing practice where

18  consumers applying for a mortgage would receive calls, texts, and other communications from rival

19  mortgage loan officers.  Request for Judicial Notice ("RJN") Ex. 1 at 5-6.  Under the HPPA, CRAs

20  may only provide consumer reports to lenders following a mortgage application if the (1) the third

21  party provides documentation certifying that it has the consumer's consent; or (2) the third party

22  has originated a mortgage on behalf of the consumer, is a current mortgage loan servicer to the

23  consumer, or has a current specified banking relationship with the consumer.  RJN Ex. 2 at 8-9.

24  **II.  Plaintiffs' Allegations**

25      Plaintiffs Darryl Davis and Brett McNamar filed this putative nationwide class action

26  alleging violations of the FCRA based on Experian's purported disclosure of their telephone

27  numbers in connection with its "Prescreen" service, branded as "Prospect Triggers."  FAC, ¶¶ 5–

28  6, 49.  Plaintiffs state that Experian is a CRA that maintains consumer data and offers marketing

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 4:25-cv-04819-HSG

products, including "Prospect Triggers," which purportedly allow lenders to contact consumers who recently applied for credit. FAC, ¶¶ 19–31. Plaintiffs allege that, when lenders request consumer reports to evaluate credit applications, Experian discloses consumers' reports and telephone numbers to other lenders as trigger leads without the consumers' knowledge or consent, allegedly causing those consumers to receive unsolicited calls and texts. *Id.*, ¶¶ 4, 28–31. Plaintiffs concede the FCRA permits disclosure of limited information for firm offers of credit under 15 U.S.C. § 1681b(c)(1)–(2), and they interpret § 1681b(c)(2) to prohibit disclosure of telephone numbers in that context. *Id.*, ¶¶ 6, 78–80.

Davis commenced this action on June 6, 2025. ECF No. 1. Experian moved to compel Davis's claims to arbitration on June 23, 2025. ECF No. 9. While the arbitration motion was pending, Plaintiff filed the FAC on September 12, 2025, adding McNamar as a second named Plaintiff. ECF No. 33. The Court granted Experian's arbitration motion on October 24, 2025. ECF No. 43. On October 28, 2025, Experian moved to stay the case pending completion of Davis's arbitration. ECF No. 44. On October 30, 2025, Plaintiff Davis filed a notice of voluntary dismissal, ECF No. 45, and the Court subsequently set a November 4, 2025 Case Management Conference. ECF No. 46. Because Plaintiff Davis must arbitrate his claims, Experian brings this motion solely against Plaintiff McNamar.

Plaintiff McNamar alleges that, on or about January 6, 2025, he applied for a home equity line of credit through Unify Financial Credit Union ("Unify"). McNamar alleges that after applying for credit with Unify, he started receiving "unsolicited phone calls" daily from "unknown third party lenders" with "firm offers of credit." FAC, ¶¶ 40–49. He asserts that these unwanted calls caused frustration and violated his "right to consumer privacy under the FCRA." *Id.* The FAC does not identify any alleged third-party that called Plaintiff, the dates or contents of any call, what information the callers possessed, or any facts showing Experian provided McNamar's telephone number to any caller.

Based on these allegations, Plaintiff pleads two causes of action. He alleges that Experian willfully (15 U.S.C. § 1681n) or negligently (15 U.S.C. § 1681o) violated 15 U.S.C. § 1681b(c) by providing consumer telephone numbers to third-party lenders. *Id.*, ¶¶ 61–81. Plaintiff seeks

1  statutory, punitive, and actual damages. *Id.*, ¶ 82.

2  **STANDARD**

3      Federal courts have limited jurisdiction, and a lack of Article III standing requires dismissal

4  for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Maya v.*

5  *Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Challenges to standing can be either facial or

6  factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "Where, as here, a

7  defendant brings a facial challenge to standing, the court assesses whether the plaintiff has alleged

8  sufficient facts that, taken as true, demonstrate each element of Article III standing." *Khamooshi v.*

9  *Politico LLC*, 2025 WL 1408896, at *2 (N.D. Cal. May 13, 2025) (citing *Jones v. L.A. Cent. Plaza*

10  *LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023)).

11      To maintain standing, Plaintiff must show "(i) that he suffered an injury in fact that is

12  concrete, particularized, and actual or imminent, (ii) that the injury was likely caused by the

13  defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC*

14  *v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61

15  (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a

16  legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

17  conjectural or hypothetical.'" *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1046 (N.D. Cal. 2022)

18  (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). To establish causation, Plaintiff must

19  show "a causal connection between the injury and the conduct complained of—the injury has to be

20  fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the

21  independent action of some third party not before the court." *Greenley v. Kochava, Inc.*, 684 F.

22  Supp. 3d 1024, 1040 (S.D. Cal. 2023) (quoting *Lujan*, 504 U.S. at 560) (internal quotations

23  omitted).

24      Even if a plaintiff can establish standing, a complaint must be dismissed under Federal Rule

25  of Civil Procedure 12(b)(6) where a plaintiff fails to allege facts which, if true, would entitle the

26  complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A plaintiff must state "enough

27  facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

28  544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court

1  to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

2  U.S. at 678.

3      In resolving a motion under Rule 12(b)(6), a court must follow a two-step approach. *Id*. at

4  679.  First, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals

5  of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

6  at 678 (quoting *Twombly*, 550 U.S. at 555).  Second, assuming the veracity of well-pleaded factual

7  allegations, a court must "determine whether they plausibly give rise to an entitlement to relief."

8  *Id*. at 679.  This determination is context-specific, requiring a court to draw on its experience and

9  common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to

10  infer more than the mere possibility of misconduct."  *Id*.

11                                    **ARGUMENT**

12  **I.    Plaintiff McNamar Lacks Article III Standing**

13      Plaintiff McNamar's claim is a narrow one.  He does not allege that Experian lacked a

14  permissible purpose to provide Unify with his consumer report.  Nor does he dispute that Section

15  1681b(c) permitted Experian to provide his information to other mortgage lenders after he applied

16  for credit with Unify.  He also does not contest that these lenders could contact him to offer credit.

17  Instead, Plaintiff's only complaint is that the FCRA did not permit Experian to provide his phone

18  number to these lenders.  But Plaintiff's alleged injury does not suffice for standing.

19      To start, it is well-settled that "a 'bare procedural violation' of the FCRA, 'divorced from

20  any concrete harm,' fails to satisfy Article III's injury-in-fact requirement." *Syed v. M-I, LLC*, 853

21  F.3d 492, 499 (9th Cir. 2017) (quoting *Spokeo*, 578 U.S. at 341); *TransUnion LLC v. Ramirez*, 594

22  U.S. 413 (2021).  Thus, even if Experian violated the FCRA by providing his phone number to

23  third-party vendors (it did not), that alone is insufficient to confer standing.  Rather, Plaintiff must

24  establish that he was injured and the alleged injury is fairly traceable to Experian's alleged violation

25  of the FCRA.  *See TransUnion*, 594 U.S. at 424.  Plaintiff cannot make any such showing.

26      **A.    Plaintiff Lacks A Protected Privacy Interest In His Telephone Number**

27      As noted, the FCRA was enacted to "ensure fair and accurate credit reporting, promote

28  efficiency in the banking system, and protect consumer privacy."  *Syed*, 853 F.3d at 496 (quoting

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 4:25-cv-04819-HSG

1   *Safeco*, 551 U.S. at 52).  And to protect consumer privacy, the FCRA details the circumstances in

2   which Experian can disclose consumer reports to third-parties.  *See generally* 15 U.S.C. § 1681b.

3   Consequently, a plaintiff has standing where "a third-party obtains her [consumer] report without

4   a purpose authorized by the statute."  *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493 (9th

5   Cir. 2019); *see also Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1100 (9th Cir. 2022) (*Syed*

6   "explained that this procedural rule protected the consumer's substantive right to control who

7   received their credit report and identify any violation of their rights of privacy and information").

8          This case, however, does not involve the improper disclosure of a consumer report (or any

9   credit information).  It involves the alleged dissemination of Plaintiff's telephone number.  But a

10  telephone number does not bear on an individual's creditworthiness; it merely constitutes credit-

11  header information that is not part of a consumer report.  *Gray v. Experian Info. Sols., Inc.*, 2023

12  WL 6895993, at *3 (M.D. Fla. Oct. 19, 2023) (collecting cases); *Harrington v. Choicepoint Inc.*,

13  2006 WL 8198396, at *6–8 (C.D. Cal. Oct. 11, 2006) (holding that reports containing names,

14  addresses, dates of birth, and social security numbers did not bear on any factors listed in Section

15  1681a(d)(1)); *Drake v. Enhanced Recovery Co., LLC*, 2018 WL 1402586, at *4 (D. Or. Mar. 19,

16  2018) ("[B]asic contact information obtained from the CRAs d[oes] not constitute a credit report.");

17  *see also* FTC, *40 Years of Experience with the Fair Credit Reporting Act (2011)*, 2011 WL

18  3020575, at *2 n.4 (stating "identifying information (*e.g.*, name, address) generally is not

19  considered 'consumer report' information under the FCRA").  Indeed, credit header information,

20  such as a telephone number, is not even considered part of a consumer's credit "file," which is

21  defined as "all of the information on that consumer recorded and retained by a consumer reporting

22  agency regardless of how the information is stored." *Tailford*, 26 F.4th at 1101–02 (quoting 15

23  U.S.C. § 1681a(g)).  Because credit header information is detached from credit information, the

24  Supreme Court and multiple appellate courts have unsurprisingly found that the dissemination of

25  inaccurate contact information does not cause an injury-in-fact.  *See Spokeo*, 578 U.S. at 342

26  ("[N]ot all inaccuracies cause harm or present any material risk of harm. An example that comes

27  readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an

28  incorrect zip code, without more, could work any concrete harm."); *Phipps v. Experian Info. Sols.*,

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 4:25-cv-04819-HSG

*LLC*, 2024 WL 5001842, at *2 (2d Cir. Dec. 6, 2024) ("Incorrect address information, a one-year disparity in birth year, and slight variations of the appellant's name are the types of inaccuracies that do not, without more, 'work any concrete harm' by virtue of their dissemination alone."). Accordingly, because Plaintiff's telephone number is not part of his consumer report or credit file, its dissemination does not implicate the FCRA's privacy protections.

Recent privacy jurisprudence further confirms that the dissemination of a telephone number alone does not confer standing. In the privacy context, "the nature of the injury turns on whether a plaintiff has a legitimate expectation of privacy." *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *3 (N.D. Cal. June 24, 2025) (citation omitted). Put another way, consumers only have a protected privacy interest in the information that would be "highly offensive to a reasonable person" if disclosed. *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 995–96 (9th Cir. 2023); Restatement (Second) of Torts § 652D ("One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.").

Under this backdrop, the Ninth Circuit recently held that consumers do not have a privacy interest in their website browsing activity. *Popa v. Microsoft Corp.*, 2025 WL 2448824, at *6 (9th Cir. Aug. 26, 2025). *Popa* explained that the disclosure of plaintiff's browsing history, which did not contain any "embarrassing, invasive, or otherwise private information" did not cause "harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id*. at *5. In so holding, *Popa* expressly reaffirmed *Phillips v. U.S. Customs & Border Prot.*, which held the government's unlawful collection and retention of "names, birthdays, social security numbers, occupations, addresses, social media profiles, and political views and associations" does not "give[] rise to reputational harm or injury to privacy interests." 74 F.4th 986, 996 (9th Cir. 2023). "This identifying information is . . . a far cry from the types of information that . . . are so sensitive that another's retention of the information is analogous to tortious conduct." *Id*.

*Popa* and *Phillips* affirm a long line of cases holding the disclosure of a telephone number is insufficient to confer standing. *See Zynga*, 600 F. Supp. 3d at 1049 ("[T]he Court is hard pressed to conclude that basic contact information, including one's…phone number,…is private information. All of this information is designated to be exchanged to facilitate communication and is thus available through ordinary inquiry and observation."); *Jackson v. Loews Hotels, Inc.*, 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019) (disclosure of phone number in data breach not "sensitive enough" to confer standing); *Lien v. Talkdesk, Inc.*, 2025 WL 551664, at *1 (N.D. Cal. Feb. 19, 2025) ("phone numbers" were "simply not private or personal enough to confer standing") (collecting cases). Thus, basic identifiers—as opposed to the collection of users' health, financial, or other sensitive information—are "not the type of private information that the law has historically protected." *See Popa v. PSP Grp., LLC*, 2023 WL 7001456, at *4 (W.D. Wash. Oct. 24, 2023); *see also People of State of Cal. v. F.C.C.*, 75 F.3d 1350, 1361 (9th Cir. 1996) ("A phone number is not among the select privacy interests protected by a federal constitutional right to privacy."); *Thrasher v. CMRE Fin. Servs., Inc.*, 2015 WL 1138469, at *3 (S.D. Cal. Mar. 13, 2015) ("The disclosure of phone numbers and names does not constitute a serious invasion of privacy and is commonplace in class actions."); *Baysal v. Midvale Indem. Co*., 78 F.4th 976, 979 (7th Cir. 2023) (explaining that drivers' license numbers did not constitute "the sort of potentially embarrassing or intimate details" covered by the common-law privacy torts). It has therefore long been held that consumers lack a privacy interest in their telephone numbers, and thus the dissemination of Plaintiff's telephone number does not confer standing to assert a FCRA claim against Experian.

**B.    Plaintiff Does Not Have Standing Based on Third-Party Calls**

To the extent Plaintiff contends that the receipt of calls from unidentified third-party lenders confers standing for his FCRA claim against Experian, he is mistaken. The FCRA expressly permits lenders to solicit Plaintiff with "firm offers of credit," and Plaintiff offers no allegations to the contrary. *See* § 1681b(c). More specifically, there is no dispute that if Plaintiff met a lender's pre-selected criteria, the FCRA permits Experian to provide Plaintiff's information to that lender, which in turn is entitled to contact Plaintiff to offer credit. Thus the harm that Plaintiff complains of—receiving unsolicited communications from lenders—is permitted under the FCRA.

1    This fact distinguishes this case from those under the Telephone Consumer Protection Act

2    ("TCPA"), which Plaintiffs' suit masquerades as.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S.

3    332, 352 (2006) (noting Article III standing is claim- and relief-specific).  The purpose of the TCPA

4    is to protect consumers from receiving unwanted solicitations. *Hall v. Smosh Dot Com, Inc.*, 72

5    F.4th 983, 989 (9th Cir. 2023) (TCPA and its regulation address "the need to protect residential

6    telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they

7    object" and the "National Do-Not-Call Registry is directed at preserving the privacy of the

8    residential subscriber who listed their number with the expectation that they would not be contacted

9    by telemarketers").  But the FCRA made these solicitations permissible regardless of whether

10   consumers want them.  And that is precisely why cases involving prescreening under the FCRA

11   typically center either on whether the consumer reporting agency had a permissible purpose to

12   provide the lender with the consumer's information, *e.g.*, *Abbink*, or whether the soliciting lender

13   actually provided a "firm offer of credit."  *See, e.g.*, *Cole*, 389 F.3d 719; *Kennedy,* 369 F.3d 833.

14   Both issues go to whether the privacy tradeoff contemplated by Congress—*i.e.*, that the consumer's

15   privacy is not being intruded without value—is occurring.  Plaintiff's alleged harm—freedom from

16   solicitation—is thus entirely divorced from the purpose of the statute.

17   To be sure, Congress recognized "that some consumers may find that direct marketing and

18   prescreening entail an undesirable invasion of their privacy." *Nayab*, 942 F.3d at 489.  It therefore

19   created an opt-out procedure through which a "consumer may elect to have the consumer's name

20   and address excluded from any list provided by a consumer reporting agency under subsection

21   (c)(1)(B) in connection with a credit or insurance transaction that is not initiated by the

22   consumer, …"  *Id.*; 15 U.S.C. § 1681b(e)(1).[2]

23   Thus, if Plaintiff did not want Experian to provide *any* of his information to third parties for

24   purposes of furnishing firm offers of credit, he could have done so.  But Plaintiff does not allege he

25   opted-out, meaning he was free to receive firm offers of credit.  Consequently, just as a TCPA

26   plaintiff who did not place their number on the national or a company's internal "do-not-call" list

---

27        [2] The opt-procedure is well publicized by the FTC, CFPB, and other consumer reporting
28   agencies. *See, e.g.*, https://www.experian.com/blogs/ask-experian/credit-education/faqs/preapprov
     ed-credit-offers/opt-out/.

11

1   lacks standing, so too does Plaintiff by failing to opt-out of being included on prescreen lists.  *See*

2   *Stewart v. Network Cap. Funding Corp.*, 2021 WL 6618542, at *3 (C.D. Cal. July 2, 2021) ("The

3   parties agree that for Plaintiff to have standing to bring an internal do-not-call claim under the

4   TCPA, he must have requested to be placed on NCFC's do-not-call list."); *Luckau v. Sunrun, Inc.*,

5   2025 WL 2780784 (N.D. Cal. Sept. 30, 2025) (same); *Perrong v. S. Bay Energy Corp.*, 2021 WL

6   1387506, at *3 (E.D. Pa. Apr. 13, 2021) ("In other words, a caller could only violate [the TCPA] if

7   it called someone who had asked to be put on the list."); *Cordoba v. DIRECTV, LLC*, 942 F.3d

8   1259, 1272 (11th Cir. 2019) (holding that class members who never told telemarketing firm to stop

9   calling them lacked standing to bring internal do-not-call list claim).

10       Finally, courts consistently find that spam calls outside the TCPA context do not confer

11  standing.  *See Zynga*, 600 F. Supp. 3d at 1051 (citing cases); *Jackson*, 2019 WL 6721637, at *4

12  (citing cases); *In re Illuminate Educ. Data Sec. Incident Litig.*, 2023 WL 3158954, at *3 (C.D. Cal.

13  Apr. 19, 2023) ("Receipt of spam, ***absent any other injury***, is insufficient to establish an injury for

14  the purposes of standing."); *Johnson v. Yuma Reg'l Med. Ctr.*, 769 F. Supp. 3d 936, 945 (D. Ariz.

15  2024).  And in any event, Plaintiff does not allege that Experian or its agents made any calls to him,

16  and Experian therefore cannot be the entity that caused the "nuisance."  *Morgan v. Twitter, Inc.*,

17  2023 WL 3271147, at *4 (E.D. Wash. May 5, 2023) ("There are no facts plead that would

18  demonstrate an alleged invasion of Plaintiff's private solitude. Plaintiff does not allege that Twitter

19  made unsolicited contact with him which could be analogous to telemarketing."); *K.L. v. Legacy*

20  *Health*, 2024 WL 4794657, at *7 (D. Or. Nov. 14, 2024) (no claim for intrusion upon seclusion

21  against health care provider for sharing consumers' private information to advertisers who

22  contacted Plaintiff since the dissemination of her information was "not an underlying intrusion on

23  Plaintiff's seclusion").[3]

24

25  _____

    [3] Plaintiff cannot bring a TPCA claim against Experian for these very reasons.  He cannot
26  assert a direct liability claim against Experian because it did not make a call and Plaintiff does not
    allege that the lenders acted as Experian's agents, as required to establish vicarious liability.  *Sapan*
27  *v. Shore Cap. Corp.*, 2024 WL 4002620, at *6-9 (C.D. Cal. May 31, 2024) (no TCPA liability
    where Plaintiff does not allege facts to establish agency theory); *Jones v. Royal Admin. Servs., Inc.*,
28  887 F.3d 443 (9th Cir. 2018) (no TCPA liability because evidence did not support they had
    authority over telemarketer); *Schick v. Caliber Home Loans, Inc.*, 2021 WL 4166906 (N.D. Cal.
    Sept. 14, 2021) (same).

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 4:25-cv-04819-HSG

1       Put simply, the bare procedural violation asserted by Plaintiffs has no bearing on whether

2   Experian violated the interests the FCRA was designed to protect.  Accordingly, armed with an

3   alleged procedural violation that does not trigger the core purposes of the FCRA, Plaintiffs'

4   interests do not "fall within the zone of interests protected by the law invoked."  *Lexmark Intern.,*

5   *Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014).  For this reason as well, Plaintiff

6   McNamar lacks standing to sue.

7   **II.      Plaintiff Does Not Allege Experian Violated Section 1681b(c)(2)**

8       Even if Plaintiff could establish standing (he cannot), his claims would still fail on the

9   merits. Plaintiff alleges that Experian violated Section 1681b(c) by providing his telephone number

10  to third-party lenders, claiming "[t]he FCRA . . . 'only' permits the release of the 'name' and

11  'address' of Plaintiffs . . . for trigger leads and unsolicited firm offers of credit."  FAC ¶ 71.  But

12  that is not true.  Experian is also permitted to provide "other information pertaining to a consumer

13  that does not identify the relationship or experience of the consumer with respect to a particular

14  creditor or other entity."  15 U.S.C. § 1681b(c)(2)(C).  By wholly ignoring subsection (c)(2)(C),

15  Plaintiff does not plausibly allege Experian cannot provide a telephone number to third parties.

16  Indeed, Plaintiff does not (and cannot) allege that the disclosure of his telephone number "identifies

17  [his] relationship" with a lender, and thus he cannot plausibly allege that Experian ran afoul of §

18  1681b(c)(2).  Such information is not even part of a consumer report because it does not bear on

19  creditworthiness.  *See, e.g.*, *Gray*, 2023 WL 6895993 at *3 (collecting cases).  And the fact that

20  Experian can disclose student loan information in the prescreening process pursuant section

21  1681b(c)(2) makes it even more apparent that telephone numbers may be disclosed as "other

22  information." *Abbink*, 2019 WL 6838705, at *6 (citing *McDonald v. Nelnet, Inc.*, 477 F. Supp. 2d

23  1010, 1014–15 (E.D. Mo. 2007); *Schwartz v. Goal Financial LLC*, 485 F. Supp. 2d 170, 177–78

24  (E.D.N.Y. 2007)).

25      Furthermore, Plaintiff cannot state a claim because his suit attacks a long-sanctioned

26  practice.  "Congress amended FCRA in 1996 to permit creditors to purchase prescreened lists of

27  consumers who meet the creditor's specific criteria without the consumers' consent as long as the

28  purchaser intends to give the consumer a 'firm offer of credit.'" *Poehl v. Countrywide Home Loans,*

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 4:25-cv-04819-HSG

*Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (citing § 1681b(c)(1)(B)(i)).  In 2004, the Federal Reserve, as required by the FACT Act (Pub. L. No. 108–109), reported to Congress that prescreened solicitations "may be conducted by mail, *telephone*, or electronically through the internet,…"  RJN Ex. 3 at 21 (emphasis added).  The practice of prescreens and trigger leads has been repeatedly upheld, *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103 (2d Cir. 2009), and government agencies have long extolled the benefit to consumers of reviewing unsolicited firm offers of credit through prescreening. RJN Ex. 3 at 19 ("The benefits to consumers of receiving prescreened written offers of credit or insurance are significant.").

"Trigger leads" have received scrutiny in recent years.  For instance, in 2023, Congress questioned executives from Experian, Equifax, and TransUnion about "trigger leads."  Each CRA explained that they complied with the FCRA and that the consumer had the right to opt-out.  RJN Ex. 4 at 112, 122, 132-33.  Around the same time, Rohit Chopra, Director of the CFPB, was asked in a Senate Committee hearing about trigger leads.  While acknowledging that consumers could receive a "barrage of calls," Director Chopra stated the CFPB's "authority is somewhat limited" to regulate trigger leads.  RJN Ex. 5 at 161.  Congress thereafter introduced legislation to curtail the practice of "trigger leads" in mortgage applications.  HPPA's sponsors expressly stated that the law was passed to curb the ongoing practice where consumers applying from mortgage would receive calls, texts, and other communications from rival mortgage loan officers.  RJN Ex. 1 at 5.  HPPA, signed into law last month, amended Section 1681b(c) of the FCRA to only permit CRAs to provide prescreens to companies that have received consumer consent or have a preexisting relationship with the consumer.  RJN Ex. 2 at 8-9.

The FCRA's statutory history, particularly Congress's recent action, undermines Plaintiff's claims. The reenactment canon of construction "provides that whenever Congress amends a statutory provision, 'a significant change in language is presumed to entail a change in meaning.'" *In re Davis*, 960 F.3d 346, 354 (6th Cir. 2020) (quoting *Arangure v. Whitaker*, 911 F.3d 333, 341 (6th Cir. 2018)); *Jackson Nat'l Life Ins. Co. v. Crum*, 54 F.4th 1312, 1322 (11th Cir. 2022) ("[W]e we must presume that the significant changes to this statutory language connote a change in meaning."); A. SCALIA & B. GARNER, *Reading Law: The Interpretation of Legal Texts* 256

1  (2012) (explaining the reenactment canon, which provides that "a change in the language of a prior

2  statute presumably connotes a change in meaning" where the changes are not merely "stylistic or

3  nonsubstantive"). The "significant change in meaning" is self-evident here. In order to protect

4  consumers from receiving excessive solicitations, HPPA expressly alters the prescreening process

5  under the FCRA by limiting the entities to whom mortgage trigger leads may be sent.

6      In light of HPPA's sweeping change to the FCRA's prescreen process, finding Experian's

7  provision of a phone number impermissible under the statute would violate the presumption against

8  retroactivity. *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). In assessing the retroactive

9  effect of a new rule, a court must determine "whether it would impair rights a party possessed when

10  he acted, increase a party's liability for past conduct, or impose new duties with respect to

11  transactions already completed." *Id*. at 280. "If so, then in keeping with [the] traditional

12  presumption against retroactivity," courts "presume that the statute does not apply to that conduct."

13  *Martin v. Hadix*, 527 U.S. 343, 352 (1999).

14  **III.    Plaintiff Cannot Allege a Willful Violation**

15      "To establish willfulness under 15 U.S.C. § 1681n, Plaintiffs must show a CRA knowingly

16  or recklessly violated the statute." *Safeco*, 551 U.S. at 57–58. Reckless conduct "entail[s] an

17  unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.*, at

18  68. Accordingly, a willful violation requires that a party's reading of the FCRA is—at minimum—

19  "objectively unreasonable." *Id.* at 69–70. Plaintiff cannot plausibly allege that Experian acted

20  willfully by participating in a well-established practice permitted by the FCRA. *Moran v.*

21  *Screening Pros, LLC*, 25 F.4th 722, 730 (9th Cir. 2022) (no support that alleged FCRA violations

22  were negligent, much less willful, because, *inter alia*, "[d]efendant introduced evidence that its

23  interpretation was consistent with industry norms"). Indeed, he offers nothing more than a legal

24  conclusion that Experian's actions were "objectively unreasonable."

25      Courts routinely reject willfulness where, as here, the defendant had reason to believe its

26  conduct complied with the FCRA or where the legal status of the challenged practice was unsettled.

27  *See, e.g.*, *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1278 (N.D. Cal. 2014) ("A defendant's

28  conduct is reckless only if it was objectively unreasonable in light of legal rules that were *clearly*

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 4:25-cv-04819-HSG

1  *established* at the time.") (citing *Safeco*, 551 U.S. at 69–70) (internal quotations omitted) (emphasis

2  added).  Experian had every reason to believe its participation in the prescreen and trigger lead

3  process complied with the FCRA.

4         To begin, the FTC *explicitly permitted* Experian to release telephone number for targeted

5  marketing lists—which the FCRA more stringently restricts than prescreens—as part of a consent

6  order entered with its predecessor, TRW, Inc.  *See* RJN Ex. 6 at 317-318 (allowing TRW [now

7  Experian] to use "only the following identifying information from its consumer reporting database

8  to create [lists of consumers for sale or distribution]: name, telephone number, mother's maiden

9  name, address, …or substantially similar identifiers, or any combination thereof").  This consent

10  order was not an aberration, as the FTC reiterated the permissibility of releasing phone numbers in

11  a February 10, 2000 opinion, which the D.C. Circuit upheld.  *See In the Matter of Trans Union*

12  *Corp.*, 2000 WL 257766, at *21 (Feb. 10, 2000) (holding the FCRA's definition of consumer

13  reports—which require a permissible purpose to release—excludes "predominantly identifying

14  information including: name, mother's maiden name, generational designator, telephone number,

15  and social security number"); RJN Ex. 7 at 349; *Trans Union Corp. v. F.T.C.*, 245 F.3d 809 (D.C.

16  Cir. 2001).

17         As discussed, the prescreen and trigger lead procedure proceeded unencumbered until 2023,

18  when Congress started scrutinizing the practice.  Prior to the passage of the HPPA, CFPB director

19  Rohit Chopra testified that the agency's "authority is somewhat limited" to stop the "barrage of

20  calls" prospective homeowners might receive from mortgage lenders.  RJN Ex. 5 at 161.  This

21  admission is significant because "Congress authorized the CFPB to bring actions in federal court

22  to enforce certain consumer protection statutes and regulations," including the FCRA. *Consumer*

23  *Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1188 (9th Cir. 2016); *see also* 12 U.S.C. § 5564(a)-

24  (b) (authorizing the CFPB to "commence a civil action against" violators of federal consumer

25  financial protection laws and "act in its own name and through its own attorneys in enforcing" the

26  laws under its jurisdiction); *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 752 n.1 ("The [CFPB]

27  regulates CRAs and enforces the FCRA.").  In the absence of CFPB's authority to regulate the

28  practice, Congress stepped in to change the law.

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 4:25-cv-04819-HSG

1        With the passage of HPPA, Congress prospectively tightened restrictions on the

2    dissemination of mortgage "trigger leads," confirming the previous legality of disclosing telephone

3    numbers in the prescreen context.  *See* RJN Ex. 2.  Congress' regulation of the very conduct

4    Plaintiff challenges undermines any claim that Experian previously acted in knowing or reckless

5    defiance of an unambiguous rule.  And elementary fairness principles—reflected in *Landgraf*'s

6    admonition against retroactive disruption of settled expectations and cases declining retroactive

7    FCRA remedies—likewise cut against imputing willfulness based on conduct later addressed by

8    statute.  *Landgraf*, 511 U.S. 244, 265 (1994); *Wilson v. Retail Credit Co*., 457 F.2d 1406, 1407 (5th

9    Cir. 1972) (rejecting claim the FCRA applied to conduct preceding its passage).

10        At a minimum, this history confirms that Experian did not act willfully.  When considering

11    the reasonableness of a defendant's conduct under the FCRA, "courts may consider … guidance

12    from the courts of appeals or the Federal Trade Commission."  *Safeco*, 551 U.S. at 70; *see also*

13    *Grijalva v. ADP Screening & Selection Servs. Inc.*, 151 F.4th 1055, 1061 (9th Cir. 2025) ("[W]hen

14    the applicable language of the FCRA is 'less than pellucid,' a defendant will nearly always avoid

15    liability so long as an appellate court has not already interpreted that language." (quoting *Safeco*

16    and *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 674 (9th Cir. 2020)) (internal quotations

17    omitted).  Put another way, Experian cannot be found to have acted willfully without the existence

18    of controlling authority that "might have warned [Experian] away from the view it took."  *Shaw*,

19    891 F.3d at 760 (quoting *Safeco*, 551 U.S. at 70).

20        No such warning exists here.  To the contrary, the director of the agency responsible for

21    regulating Experian and enforcing the FCRA stated that it could not regulate the trigger lead

22    process. "This agency guidance suggests Experian's conduct, even if it were a violation of the

23    FCRA, was not objectively unreasonable and therefore not reckless."  *Id*. at 760–61.  Against this

24    backdrop, Experian's reading—that phone numbers may function as non-unique identifiers or

25    "other information" under § 1681b(c)(2)—is, at minimum, reasonable.  Indeed, while Plaintiff's

26    theory rests on extrapolating a categorical ban from § 1681b(c)(2)'s list of items a person "may

27    receive" with a firm offer—names, addresses, a non-unique identifier for identity verification, and

28    certain "other information" that does not reveal creditor relationships, they cite no controlling

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 4:25-cv-04819-HSG

1  decision, rule, or guidance holding that the release of telephone numbers are prohibited.  Under

2  *Safeco*, *Moran*, *Shaw*, and the regulatory guidance, that alone defeats willfulness.

3      In sum, the absence of controlling case law, lack of agency guidance, and Congress's

4  subsequent targeted amendment to the FCRA preclude any plausible inference that Experian

5  knowingly or recklessly violated § 1681b(c).  Simply because Plaintiff proposes a contested

6  construction of an undefined FCRA provision does not render Experian's statutory reading

7  "objectively unreasonable."  Therefore, the willfulness claim fails as a matter of law.

8                               **CONCLUSION**

9      For the reasons set forth above, the Court should grant Experian's motion to dismiss.

10

11 Dated:  October 31, 2025            JONES DAY

12                                     */s/ Ryan D. Ball*
                                       Ryan D. Ball

13

14                                     *Attorneys for Defendant*
                                       *Experian Information Solutions, Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 4:25-cv-04819-HSG