UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRETT MCNAMAR,

          Plaintiff,

    v.

EXPERIAN INFORMATION
SOLUTIONS, INC.,

          Defendant.

Case No. 25-cv-04819-HSG

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: Dkt. No. 56

Pending before the Court is Defendant's motion to dismiss. *See* Dkt. No. 56 ("Mot."); Dkt. No. 61 ("Opp."); Dkt. No. 62 ("Reply"). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss.

## I.    BACKGROUND

Plaintiff Brett McNamar filed the operative putative class action lawsuit against Defendant Experian Information Solutions, Inc. ("Experian") in November 2025. *See* Dkt. No. 51 ("SAC").[1] Plaintiff alleges that Defendant improperly disclosed class members' "telephone numbers, consumer credit information, and time sensitive information about their application for a loan" to third parties as part of a "trigger lead." *Id.* ¶¶ 1, 4. A trigger lead is a prescreened sales lead sold by a consumer reporting agency ("CRA") to third parties when a consumer applies for credit. *Id.* ¶ 5. Though trigger leads are not categorically unlawful, there are limitations on what information can be included, and Plaintiff alleges that Defendant violated the Fair Credit Reporting Act

---

[1] Darryl Davis was originally the named Plaintiff in this case, but he voluntarily dismissed his individual claim. Dkt. No. 45.

("FCRA"), 15 U.S.C. § 1681 *et seq.*, by "packag[ing] and disclos[ing] consumer telephone numbers" with other credit information in the lead. *Id.* ¶ 6.

Relatedly, Plaintiff also alleges that "the FCRA does not permit loan solicitations (or 'firm offers of credit') through trigger leads to be extended via phone call; it requires such solicitations to be extended in writing to ensure appropriate disclosures and an opportunity to opt out of such solicitations. *Id.* ¶ 7. Defendant allegedly "knew that third party lenders were using consumers' telephone numbers to extend firm offers of credit . . . [and] actively encouraged this illegal conduct." *Id.*

Plaintiff brings two counts alleging that Defendant willfully (15 U.S.C. § 1681n) and negligently (15 U.S.C. § 1681o) violated 15 U.S.C. § 1681b(c) by including consumers' telephone numbers in trigger leads. *Id.* ¶¶ 72–96. Plaintiff also brings two counts alleging that Defendant willfully and negligently violated 15 U.S.C. § 1681e(a) by furnishing trigger leads to lenders that Defendant knew would not comply with the FCRA's notice requirements and would impermissibly extend "purported firm offers" by telephone. *Id.* ¶¶ 97–114.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. Proc. 12(b)(1). The issue of Article III standing is jurisdictional and is therefore "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). To meet the burden of establishing standing, plaintiffs must show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).

### B.   Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

United States District Court
Northern District of California

2

United States District Court
Northern District of California

granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotation omitted).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. DISCUSSION

Defendant argues that Plaintiff (1) lacks Article III standing; (2) cannot state a claim for violation of 15 U.S.C. §§ 1681b(c) and 1681e(a); and (3) has not alleged a willful violation of the FCRA under 15 U.S.C. § 1681n. Mot. at 10–12, 27–28.

### A. Request for Judicial Notice

The Court first addresses Defendant's requests for judicial notice. Dkt. Nos. 57, 63. Under Federal Rule of Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Accordingly, a court may take "judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th

Cir. 2018) (quotation omitted).  If a court takes judicial notice of a document, it must specify what facts it judicially noticed.  *Id.* at 999.

For its opening motion, Defendant requests that the Court take judicial notice of six publicly available government documents that are available on the Internet and one publicly available court filing.  Dkt. No. 57 at 3–4.  These documents are matters of public record not reasonably subject to dispute.  Plaintiff disputes the relevance of these documents, but he does not challenge their authenticity and did not formally object to Defendant's request for judicial notice.  *See* Opp. at 24–25; *see also* Dkt. No. 65 at 2.  Accordingly, the Court will **GRANT** Dkt. No. 57 and take judicial notice of what these records state, though not the truth of the matters discussed within them.

For its reply, Defendant also requests that the Court take judicial notice of one other publicly available record from the Federal Deposit Insurance Corporation.  *See* Dkt. No. 63. Plaintiff objects, arguing that this is new evidence presented for the first time on reply, and "Defendant offers no justification or explanation for submission of this document with its Reply, even though it concedes that it has been publicly available since 2023."  Dkt. No. 65 at 2–3. "[W]here new evidence is presented in a reply . . . , the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond."  *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (quotation omitted).  Defendant uses this document primarily as an example to support its reply claim that "[g]overnment agencies have also agreed for decades that 'FCRA does not state that a firm offer of credit must be in writing and does not explicitly prohibit verbal offers.'"  Reply at 16 (quoting Dkt. No. 63-1).  While this is arguably responsive to Plaintiff's opposition argument that firm offers must be extended in writing, *see* Opp. at 28, Plaintiff clearly alleged this theory in his complaint, *see* SAC ¶ 7.  While this evidence would not change the Court's conclusions, the Court will **DENY** Dkt. No. 63 and **STRIKE** this evidence to ensure fairness to Plaintiff.

### B.  Lack of Standing

Defendant argues that the disclosure of Plaintiff's phone number alone does not establish a concrete injury in fact.  Mot. at 17–20.  It also argues that Plaintiff does not have standing based

on any third-party calls he received because the FCRA permitted those unsolicited calls. *Id.* at 20.

To satisfy Article III standing, a plaintiff must have suffered an "injury in fact" that is both "concrete and particularized." *Spokeo*, 578 U.S. at 339 (quotation omitted). A "concrete" injury "must actually exist," and "a bare procedural violation, divorced from any concrete harm" cannot "satisfy the injury-in-fact requirement of Article III." *Id.* at 340–41. "[E]ven though Congress may elevate harms that exist in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021)).

In determining concreteness, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* (quoting *TransUnion*, 594 U.S. at 424). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* (quoting *TransUnion*, 594 U.S. at 424). Circuits have diverged on whether "a plaintiff's harm [must satisfy] each element required to state a common-law cause of action" or whether "the harm experienced by a plaintiff [must be] similar in kind to a harm protected by one of the common-law privacy torts," and the Ninth Circuit has not clearly addressed which test should prevail. *See id.* at 790–91. But "these approaches all share an important feature: they look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." *Id.* (emphasis in original).

Here, Plaintiff argues that he experienced a harm that has a close relationship to the common law torts of intrusion upon seclusion and public disclosure of private information when Defendant disclosed his phone number to third parties. Opp. at 17–18. The Ninth Circuit recently considered these same two torts in the context of Article III concreteness in *Popa*:

> To show intrusion upon seclusion, a plaintiff must show "an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, *of a kind that would be highly offensive to a reasonable man.*" *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019) (emphasis added) (quoting Restatement (Second) of Torts § 652B cmt. a (Am. Law Inst. 1977)). Similarly, a claim for public disclosure of private

facts requires that a defendant "gives publicity" to a matter that concerns "the private life of another," that the information is "*highly offensive* to a reasonable person," and that the information is not of legitimate public concern. Restatement (Second) of Torts § 652D (emphasis added).

153 F.4th at 791 (emphasis in original).

In *Popa*, a plaintiff alleged that a website operator deployed Microsoft's "session-replay technology" on its website, which allowed it to "intercept[] and record[] the website visitor's electronic communications with the . . . website, including . . . mouse movements, clicks, keystrokes[,] URLs of web pages visited, and/or other electronic communications in real-time." *Id.* at 786. While the plaintiff had alleged that Microsoft "gathered her pet-store preferences and her street name," the Ninth Circuit concluded that she had not adequately demonstrated standing because she "[did] not explain how the tracking of her interactions with the . . . website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law" through the torts of intrusion upon seclusion and public disclosure of private facts. *Id.* at 791. The Court acknowledged that "an 'exact duplicate' is not required, and many courts require a match only in the kind of harm and not the degree." *Id.* "But [the plaintiff] identifie[d] no embarrassing, invasive, or otherwise private information collected by [Microsoft]" that would satisfy that standard. *Id.*[2]

For similar reasons, the Court finds that Plaintiff has not adequately demonstrated that his claimed harm bears a close relationship to the common law torts of intrusion upon seclusion or public disclosure of private facts. Plaintiff does not sufficiently explain what about the disclosure of his telephone number was "highly offensive" or "embarrassing, invasive, or otherwise private" such that the Court should treat the disclosure of this information differently than the disclosure in *Popa* of "pet-store preferences and . . . street name." *Id.* The Court recognizes that a telephone number may be more identifying than a street name, but Plaintiff does not seem to dispute that Defendant was already allowed to provide Plaintiff's name and address to third-party lenders. The

---

[2] The Ninth Circuit also rejected the "broad theory that the common law protected privacy rights—pitched at a high level of generality," concluding that "there existed no free-roaming privacy right at common law but rather four discrete torts that protected specific kinds of privacy-related harms." *Popa*, 153 F.4th at 792.

United States District Court
Northern District of California

additional inclusion of Plaintiff's telephone number, on its own, does not appear to implicate a "similarly sensitive sphere" to the private domains contemplated by the torts of intrusion upon seclusion and disclosure of private information, or to "sensitive medical or financial information." *Cf. id.* (discussing examples from the Restatement that would have been actionable under common law, such as taking intimate pictures through a telescopic lens).  Unsurprisingly then, courts have found that disclosure of a phone number alone does not establish concrete injury.  *See, e.g.*, *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (noting that "the Court is hard pressed to conclude that basic contact information, including one's . . . phone number[,] . . . is private information," since "[a]ll of this information is designed to be exchanged to facilitate communication and is thus available through ordinary inquiry and observation").

Plaintiff explains that he "has good reason to keep his phone number private" because "[h]e did not agree to or even know that his telephone number would be sold to hundreds of unknown third parties until he started receiving hundreds of telemarketing calls."  Opp. at 19.  It's possible that Plaintiff's intention was to argue that the disclosure was invasive or highly offensive because it triggered these unsolicited calls.  But Plaintiff has apparently disclaimed this theory of injury: "The receipt of unwanted telephone calls informs Plaintiff's claims, but he alleges that the harm in this case arises from Experian's disclosure of his protected information in violation of the FCRA.  As such, Plaintiff does not address those arguments."  *Id.* at 12 n.1 (citation omitted).  "[A]s a general rule, . . . [the parties] are responsible for advancing the facts and argument entitling them to relief."  *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (quotation omitted).  The Court will not read in a theory of standing that Plaintiff himself appears to disavow.[3]

---

[3] To be sure, the unsolicited calls could establish a clear basis for standing on their own.  Plaintiff alleges that "due to Experian's sale of Plaintiff McNamar's telephone number with his consumer credit report as part of a trigger lead, Plaintiff began receiving 10+ unsolicited phone calls each day from unknown third party lenders."  SAC ¶ 52.  "Courts have consistently found that the harm caused by unwanted communications bears a close relationship to intrusion upon seclusion" and held that receiving such communications constitutes a concrete injury.  *Six v. IQ Data Int'l, Inc.*, 129 F.4th 630, 634 (9th Cir.), *cert. denied*, 146 S. Ct. 120 (2025); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients."); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1117 (9th Cir. 2022) (affirming that "the receipt of

Plaintiff also argues that the harm is not from the disclosure of a telephone number in isolation, but the disclosure of a consumer report, as "his telephone number was included and sold in a package of information bearing on his creditworthiness." Opp. at 12, 19; *see also* SAC ¶ 92 ("Experian's disclosure of telephone numbers *and other sensitive information* in violation of the statute under these circumstances harmed Plaintiff and Class Members' concrete consumer privacy interests protected by the FRCA . . . ." (emphasis added)). To the extent Plaintiff believes that he was harmed by the transmission of a credit report generally or some other information alongside the phone number, he has not made clear that this harm is fairly traceable to the violation alleged: improperly disclosing his telephone number. *See* SAC ¶ 83. As mentioned, it appears to be undisputed that Defendant was allowed to disclose other information, such as Plaintiff's name and address, as part of its trigger leads.

Plaintiff argues that *Popa* is distinguishable "because it did not adopt the 'kind of harm' test that has been used by other Ninth Circuit authority." Opp. at 17 n.4. This is unpersuasive. *Popa* is the Ninth Circuit's most recent published authority addressing this question, and it found that the plaintiff failed to allege injury in fact under *any* approach, including the "kind of harm" test. 153 F.4th at 791. The same is true for Plaintiff here, who has not adequately alleged that a telephone number is the kind of "embarrassing, invasive, or otherwise private information" that, when disclosed, creates the same kind of harm recognized in these two privacy torts. *Cf. id.*[4] Plaintiff also tries to distinguish *Popa* by arguing that "it involve[d] CIPA, which . . . relies on common law expectations of privacy rather than being informed by specific statutory prohibitions." Opp. at 17 n.4. But Plaintiff is invoking the same common law privacy torts that

telephone calls in alleged violation of the TCPA is a concrete injury for Article III purposes" after *TransUnion*). But if this is Plaintiff's theory of standing, he must say so in any amended complaint.

[4] Plaintiff cites *Six v. IQ Data International, Inc.*, 129 F.4th 630 (9th Cir.), *cert. denied*, 146 S. Ct. 120 (2025), as an example of Ninth Circuit precedent adopting the "kind of harm" test. That case is consistent with *Popa*. In *Six*, the plaintiff had "notified [the defendant] that it should communicate only with his counsel" and had "expressed a desire to be undisturbed by [the defendant's] communications." 129 F.4th at 634. "[B]y sending a letter after receiving [plaintiff's] notification, [the defendant] created the kind of 'irritating intrusion[ ]' addressed by intrusion upon seclusion." *Id.* Those allegations plausibly established a harm of the same kind as the recognized common law harms of intrusion upon seclusion.

United States District Court
Northern District of California

were the basis for the decision in *Popa*.  In addition, the Ninth Circuit rejected the argument that the plaintiff necessarily enjoyed Article III standing just because she brought her claim under a statute that protected a substantive right to privacy.  *Popa*, 153 F.4th at 792.

Finally, Plaintiff argues that "Congress elevated Plaintiff's alleged privacy injuries that were previously inadequate in law."  Opp. at 15.  "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."  *TransUnion*, 594 U.S. at 426.  The Ninth Circuit has explicitly rejected the argument that "because the . . . legislature enacted a statute protecting a substantive privacy right, any plaintiff alleging a violation of that statute will satisfy Article III."  *Popa*, 153 F.4th at 782.  While the Court "afford[s] due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation," *TransUnion*, 594 U.S. at 425, that does not relieve the Court of its obligation to identify whether there is a close relationship with a historical or common-law analogue.

The cases that Plaintiff cites supporting concreteness are distinguishable.  First, Plaintiff points to *Holmes v. Elephant Ins. Co.*, 156 F.4th 413 (4th Cir. 2025), where the Fourth Circuit held that disclosure of two plaintiffs' driver's license numbers on the dark web constituted a concrete injury.  *Id.* at 423–26.  The court considered whether plaintiffs' harm had a close relationship to the common law tort of public disclosure of private facts and held that plaintiffs "justifiably desire[d] to keep their driver's license numbers confidential" because they alleged those numbers are "critical to easily forging an identity."  *Id.* at 425.  Two of the plaintiffs also alleged "that they found their driver's license numbers listed on the dark web."  *Id.* at 425–26.  Notably, the Fourth Circuit rejected standing for two plaintiffs that "[did] not provide any reason to think that their driver's license numbers are now generally accessible" and where "their stolen information [was] . . . accessible to only a few."  *Id.* at 425.

Even if the Court were persuaded by the Fourth Circuit's analysis of what is required to allege a harm analogous to the harm from a public disclosure of private facts (a question the Court need not decide here), Plaintiff has not alleged facts sufficient to show that kind of harm.  Most

notably, Plaintiff does not allege that his phone number is generally accessible or accessible to more than a few third parties.  Plaintiff also does not seriously explain his assertion that he "has good reason to keep his phone number private," Opp. at 18, unlike the plaintiffs in *Holmes*.  And the Fourth Circuit notably did *not* suggest that the two plaintiffs who failed to plead publication of their driver's license numbers would nevertheless have standing under a theory of intrusion upon seclusion.[5]

Second, several of Plaintiff's cases found standing with limited explanation of the common law analogue or where substantially more sensitive information was obtained or disclosed.  *See, e.g.*, *Gershzon v. Meta Platforms, Inc.*, No. 23-CV-00083-SI, 2023 WL 5420234, at *7 n.2 (N.D. Cal. Aug. 22, 2023) (finding standing where tracking software transmitted "information concerning users' interests, phone and address status, health and disability status, immigration status, and concerns"); *Ives v. Bath & Body Works, LLC*, 731 F. Supp. 3d 254, 261 (D.N.H. 2024) ("He alleges that this information included, among other things, his name, his driver identification number, his address, and medical or disability information."); *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, 778 F. Supp. 3d 56, 70–73 (D.D.C. 2025) (largely relying on analysis of statute and Congressional intent).[6]  Given all of the above, the Court **DISMISSES** Counts I and II for lack of standing with leave to amend.

In contrast, Plaintiff has standing to bring his § 1681e claims.[7]  The Ninth Circuit has expressly stated that a plaintiff has Article III "standing to vindicate [his] right to privacy under the FCRA when a third-party obtains [his] credit report without a purpose authorized by the statute, regardless [of] whether the credit report is published or otherwise used by that third-party."

---

[5] At least one circuit has also found that "a driver's-license number is not potentially embarrassing or an intrusion on seclusion," which supports the Court's holding here.  *See Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 980 (7th Cir. 2023).

[6] Plaintiff also cites *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982–84 (9th Cir. 2017).  Opp. at 13–14.  The Ninth Circuit has recently suggested that this pre-*TransUnion* decision may be outdated.  *See Popa*, 153 F.4th at 794.

[7] Plaintiff claims that "Experian does not argue that [Plaintiff] lacks standing to assert the third and fourth claims."  Opp. at 26 n.9.  The Court does not read Defendant's 12(b)(1) motion to be limited to the first two claims, but the Court has an independent obligation to confirm its subject matter jurisdiction either way.

*Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493 (9th Cir. 2019); *see also Palmer v. HSBC Bank, USA, NA*, No. 23-15226, 2024 WL 2287199, at *1 (9th Cir. May 21, 2024) (unpublished memorandum disposition applying *Nayab* that the Court considers for its persuasive value).  Plaintiff alleges that Defendant impermissibly furnished Plaintiff's "consumer reports for a purpose not authorized by statute . . . knowing that these third party lenders would extend purported firm offers of credit via telephone calls and text messages without complying with the FCRA's notice requirements" and "actually encouraged third party lenders" to do so.  SAC ¶¶ 111–12.  Whether submitting a firm offer over the phone is in fact a permissible purpose is a merits question discussed below.

However, Plaintiff does not have standing to argue that Defendant knowingly furnished his report to lenders who did not provide him with firm offers of credit at all.  Plaintiff explicitly alleges that the "third party lenders provided him with firm offers of credit." *Id.* ¶ 53.  Plaintiff cannot rewrite that allegation in his opposition by pointing to other allegations where Plaintiff stated that *other* class members were receiving "purported" firm offers of credit.  *See* Opp. at 26–27; SAC ¶¶ 47, 102, 111.  Plaintiff tries to argue that the Court should infer that this was not actually a firm offer because the next paragraph in the complaint alleges that the offers did not include "the relevant disclosures about firm offers of credit as required by the FCRA."  SAC ¶ 54.  The Court is doubtful this is a definitional component of a firm offer of credit and not a separate requirement in the FCRA; nevertheless, it explains why this argument fails even if Plaintiff has standing to bring this claim.  Given the above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's 12(b)(1) motion as to Counts III and IV.

### C.    § 1681e(a) Claims (Counts III and IV)

Defendant argues that Plaintiff fails to state a claim for a violation of § 1681e because Defendant had a permissible purpose for disclosing class members' credit information.  Mot. at 25.  Plaintiff argues that the information was furnished for an impermissible purpose because (1) third parties were not extending valid firm offers of credit; and (2) these firm offers were improperly extended by telephone.  Opp. at 25–26.  Specifically, Plaintiff alleges that "Defendant furnished Plaintiff's and Class Members' telephone numbers and consumer reports to third party

lenders knowing that these third party lenders would extend purported firm offers of credit via telephone calls without complying with the FCRA's notice requirements, including that consumers be informed about the FCRA's opt-out provision in writing." SAC ¶ 102. Plaintiff also alleges that Defendant "actually encouraged third party lenders to immediately extend firm offers of credit via phone or text." *Id.* ¶ 103.

Under 15 U.S.C. § 1681e, "[e]very consumer reporting agency shall maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." *Id.* § 1681e(a). "No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title." *Id.* Relevant here, a CRA may furnish a consumer report "[t]o a person which it has reason to believe . . . intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." *Id.* § 1681b(a)(3)(A). But the CRA may only do so if "(i) the transaction consists of a firm offer of credit or insurance; (ii) the consumer reporting agency has complied with [the opt-out provisions of] subsection (e); (iii) there is not in effect an election by the consumer, made in accordance with subsection (e), to have the consumer's name and address excluded from lists of names provided by the agency pursuant to this paragraph; and (iv) the consumer report does not contain a date of birth that shows that the consumer has not attained the age of 21." *Id.* § 1681b(c)(1)(B).

As with all questions of statutory interpretation, the Court "begins with the plain language of the statute." *See Cheneau v. Garland*, 997 F.3d 916, 919 (9th Cir. 2021) (en banc) (quoting *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009)). The Court "read[s] the words 'in their context and with a view to their place in the overall statutory scheme.'" *Cheneau*, 997 F.3d at 919 (quoting *King v. Burwell*, 576 U.S. 473, 486 (2015)). "Where the statute does not define the relevant terms, [courts] give them 'their ordinary, contemporary, common meaning,' and 'may consult dictionary definitions.'" *City of Los Angeles v. Barr*, 941 F.3d 931, 940 (9th Cir. 2019) (quotation omitted). "The plain meaning of the statute controls, and courts will look no further,

unless its application leads to unreasonable or impracticable results." *Robinson v. United States*, 586 F.3d 683, 687 (9th Cir. 2009) (quotation omitted). If the language is ambiguous, the Court may also look to "canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." *Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006).

Contrary to Plaintiff's suggestion, nothing in the plain language of the statute requires that a firm offer be in writing. "The term 'firm offer of credit or insurance' means *any offer* of credit . . . to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned" on one of three statutory conditions. 15 U.S.C. § 1681a(l) (emphasis added). The statute does not limit the permissible purposes in § 1681b(c) to, for example, "firm offers of credit or insurance *in writing*." It may be the case that the FCRA imposes certain disclosure requirements for written firm offers, 15 U.S.C. § 1681m(d), which appears to counterintuitively allow non-written offers to skate by with fewer protections. But the Court will not read in a requirement that does not exist and is not suggested elsewhere in the statute, particularly in light of Congress' choice to reference "written credit or insurance solicitations" in § 1681m(d), but simply "credit or insurance transactions" in § 1681b(c).[8]

Plaintiff states that "Experian does not cite to a single court decision holding that firm offers of credit may be extended via telephone calls." Opp. at 28. But Plaintiff also does not present any cases directly adopting his view. Ultimately, very few cases confront this statutory provision, so the Court does not give particular weight to the absence of authority in either direction. Moreover, the few cases that partially address this statutory question slightly support Defendant's position. *See Scharpf v. AIG Mktg., Inc.*, 242 F. Supp. 2d 455, 461–62 (W.D. Ky. 2003) (discussing without objection a firm offer extended over a telephone call); *In re Trans Union Corp. Priv. Litig.*, 211 F.R.D. 328, 338 (N.D. Ill. 2002) ("Plaintiffs have presented no authority to support their position that a consumer reporting agency has an obligation to 'police'

---

[8] Plaintiff states that the opt-out provisions "are only effective if a firm offer of credit must be furnished in writing." Opp. at 28. The Court doesn't understand how that follows. That list deals with the removal of consumers' names and addresses from the CRA's records, not from the creditors' records, and it says nothing about how creditors must contact consumers.

each permissible solicitation sent by its customers to ensure that the customer has complied with its obligations."). In contrast, Plaintiff cites *McDonald v. NextStudent Inc.*, 542 F. Supp. 2d 956 (E.D. Mo. 2008), but that case involved a defendant who had conceded that the initial communication was not a firm offer of credit and was instead arguing that a later oral communication corrected that defect. *See id.* at 963. Here, Plaintiff has seemingly conceded that the first communication was a firm offer of credit, and the question is just if the method of communication (or the absence of some disclosures) invalidated the otherwise permissible nature of that offer.[9]

Plaintiff also argues that these weren't firm offers because they did not comply with the statutory notice requirements. Opp. at 26. As discussed earlier, Plaintiff does not have standing to bring this claim while also conceding that he received a firm offer. The Court understands that Plaintiff intended to argue that he had "purportedly" received a firm offer. *See id.* But even if he had standing for this argument, Plaintiff mischaracterizes the complaint when he states that the offers did not meet the minimum statutory notice requirements of § 1681a(l). *See id.* Plaintiff makes no such factual allegations in his complaint. It's also not clear that 15 U.S.C. § 1681a(l) imposes notice requirements; rather, it defines a firm offer and lists three ways that the firm offer may be conditional.

At most, Plaintiff alleges that Defendant unreasonably furnished these reports despite knowing that the lenders would not provide the necessary disclosures pursuant to 15 U.S.C. § 1681m(d). As Defendant correctly observes, nothing in the statute suggests that an offer is not a firm offer just because these disclosures are not provided. Third party lenders arguably may have violated their own obligations under the FCRA by failing to provide these disclosures, but these provisions do not provide a private right of action, 15 U.S.C. § 1681m(h)(8), and Plaintiff concedes that "they are not the basis for Plaintiff's claims." Opp. at 28.[10]

---

[9] Plaintiff also cites cases that generally state that the standard for evaluating whether an offer is a firm offer is to look within the four corners of the offer. Opp. at 29 n.13. Those cases—which offer no serious analysis of the statutory language at issue—are unpersuasive.

[10] Moreover, any allegation that Defendant knowingly furnished reports to lenders who would not provide the necessary disclosures is conclusory. Plaintiff seems to assume that Defendant knew

14

United States District Court
Northern District of California

These facts makes Plaintiff's case distinguishable from *Holloway v. Full Spectrum Lending*, No. CV 06-5975 DOC (RNBx), 2007 WL 7698843 (C.D. Cal. June 26, 2007), where the plaintiff alleged that the "solicitation was too vague to constitute a firm offer of credit." *Id.* at *5. Similarly, *Hopper v. Credit Assocs., LLC*, No. 2:20-CV-522, 2021 WL 916647 (S.D. Ohio Mar. 10, 2021), involved a condition precedent for the firm offer that was not one of the three conditions permitted under 15 U.S.C. § 1681a(l).  There are no analogous allegations here.

While the Court finds that its conclusion is supported by the plain language of the statute, it notes that the legislative history does not provide any significant guidance.  *See CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017) ("If the language has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there.").  The reports explain what disclosures must be included with written solicitations, but not whether non-written solicitations are permitted.  *See, e.g.*, S. Rep. No. 104-185 at 47–48 (1995).  The reports also do not provide any other meaningful commentary on the definition of a firm offer.  *See, e.g.*, *id.* at 32–33.

Accordingly, the Court **DISMISSES** Counts III and IV with leave to amend, as Plaintiff may be able to otherwise allege, for example, that he did not receive a firm offer.  Defendant argues that Plaintiff should not be allowed to amend his complaint to state that he received a "purported" firm offer because he cannot amend his pleadings to directly contradict an earlier assertion made in the same proceeding.  Reply at 15 n.5.  The Court doubts this would be a true direct contradiction, rather than a correction of a mistake.  Nevertheless, while there is competing precedent on this point in the Ninth Circuit, "many other district courts" have decided to permit contradictory amendments, "which is more consistent with the Ninth Circuit's liberal policy favoring amendment." *Kanaan v. Yaqub*, No. 21-CV-09591-BLF, 2022 WL 3357834, at *4 (N.D. Cal. Aug. 15, 2022).[11]  The Court can assess whether any future amendment is contradictory, and

this because it encouraged creditors to extend the offers over the phone.  If, under Plaintiff's theory, the disclosures were required even for non-written solicitations, it's unclear how or why Defendant knew creditors were not providing these disclosures.  If the disclosures were not required for non-written solicitations, then the creditors were not acting unlawfully, and Defendant had no reason to think they were.

[11] The Court does not reach Defendant's remaining arguments.  However, Plaintiff alleges that phone numbers are information pertaining to a consumer that may identify the relationship or

15

the resulting consequences, once it has a concrete amendment before it.

## IV.   CONCLUSION

Defendant's motion to dismiss, Dkt. No. 56, is **GRANTED IN PART** and **DENIED IN PART**, and all claims are **DISMISSED** with leave to amend.  Any amended complaint must be filed within 21 days of the date of this order, and may not add any new claims or defendants.

The Court further **SETS** a case management conference on July 7, 2026, at 2:00 p.m.  The hearing will be held by Public Zoom Webinar.  All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg.  All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities.  The parties are further **DIRECTED** to file a joint case management statement by June 30, 2026.

The Court **DISMISSES** Plaintiff Darryl Davis pursuant to Dkt. No. 45, and the Clerk is directed to **TERMINATE** him from the case.  The Court also **ORDERS** the Clerk to update the case caption to match the caption used in this order.

**IT IS SO ORDERED.**

Dated:   6/4/2026

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

experience of the consumer with respect to creditors or other entities "by allowing third parties to search for information on the consumer's relationship with other entities based on their telephone number in other private and public databases."  SAC ¶ 85.  If Plaintiff amends these claims, the parties should more fully explain whether such indirect identification would fall within the plain meaning of 15 U.S.C. § 1681b(c)(2)(C).